# BOIES, SCHILLER & FLEXNER LLP

575 LEXINGTON AVENUE • 7th FLOOR • NEW YORK, NY 10022 • PH. 212-446-2300 • FAX 212-446-2350

MATTHEW L. SCHWARTZ
Tel.: (212) 303-3646
E-mail: mlschwartz@bsfllp.com

MEMO ENDORSED

July 21, 2016

**BY ELECTRONIC MAIL**

Hon. Ronnie Abrams
United States District Judge
Southern District of New York
40 Foley Square
New York, New York 10007

USDC-SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: JUL 2 1 2016

Re:   *United States v. Jason Galanis, et al.*, 16 Cr. 371 (RA)

Dear Judge Abrams:

    We represent Devon Archer, one of the defendants in the above-referenced case. I write to respectfully request the Court's permission for Mr. Archer to take a business trip to Latvia, to attend meetings for two associated companies with which Mr. Archer is involved. As the Court is aware, Your Honor previously granted Mr. Archer permission to travel to Italy on business, which he did without incident. As before, the Court's Pretrial Services Office consents to this request, but the Government objects. For the reasons that follow, I respectfully submit that Mr. Archer – who is absolutely no risk of flight – should be allowed to take this important trip.

    The proposed trip would be from July 27 to August 1 in Riga, Latvia, to attend various meetings of the senior leadership team and majority shareholders of a company in which Mr. Archer is a substantial shareholder, for the purposes of charting the company's strategic plan and other business. (He was also, until he voluntarily stepped down after the initiation of this case, a member of the company's Supervisory Council). In addition, Mr. Archer is a key participant in a series of pre-closing meetings for a renewable energy company for which he serves as an advisor, which is being sold by the first company to private investors. Those meetings will include members of senior management, the legal teams for both sides of the transaction, and government officials whose approvals are required to close the transaction. Mr. Archer has provided an itinerary to his Pretrial Services Officer, who as noted consents to this request. A copy of Mr. Archer's proposed flight and meeting space/hotel information is attached as Exhibit A, which we respectfully request to be filed under seal.

    On June 13, 2016, Your Honor granted Mr. Archer permission to travel to Italy on business, on the conditions that he (a) report daily to his Pretrial Services Officer; (b) surrender his wife and three young children's passports during the duration of his trip; and (c) execute a waiver of extradition. Mr. Archer complied with those requirements, including delivering a waiver of extradition, in the form requested by the Government, which covered not only his trip

to Italy but the entire duration of proceedings in this case. Mr. Archer successfully completed that trip, and returned to the United States as scheduled and without incident.

In short, Mr. Archer is no risk of flight. Alone among the defendants charged in this case, Mr. Archer already is permitted to travel without restriction in the continental United States. That sort of travel is also necessary for Mr. Archer's business, but the fact that the Court imposed and the Government consented to the condition speaks volumes about their faith in Mr. Archer's compliance. That Mr. Archer has gone and returned to Italy during the pendency of this case likewise demonstrates that he is no risk of flight. As set forth at greater length in our June 11th letter requesting permission for the Italy trip [ECF No. 41], Mr. Archer engaged fully with the Government throughout the course of its lengthy investigation, including returning from overseas once the Government first identified Mr. Archer as a "target" of its investigation, and producing documents to the Government on the same day the criminal complaint was sworn out (when the Government had made it fairly plain that it intended to charge him). Every morning on the week that he expected to be arrested, Mr. Archer sat on his front stoop at 6 AM waiting to surrender himself to law enforcement. (He waited outside principally so that his wife and three small children would not be frightened by an arrest in the home). Even *after* Mr. Archer was arrested, his defense team met with the Government to provide information and documents to attempt to convince them that an indictment of Mr. Archer was not in the interest of justice. In short, Mr. Archer – who has no criminal history at all – has repeatedly demonstrated that he intends to engage fully with the Government, either through persuasion or litigation; he is no risk of flight.

As before, if the Court permits him to travel, Mr. Archer will report daily to his Pretrial Services Officer while he is away, and Mr. Archer will surrender his three young children's passports to Pretrial Services while he is out of the county.[1] As noted above, Mr. Archer has already executed a waiver of extradition, and of course Latvia has an extradition treaty with the United States, as does the European Union, of which Latvia is a member. If the Court believes that any other measures are necessary, such as a larger appearance bond, Mr. Archer would consent to them, as well, because he has absolutely no intention of fleeing. Accordingly, on behalf of Mr. Archer, I respectfully request that he be permitted to travel to Latvia for business on July 27-August 1, 2016.

---

[1] Previously, Mr. Archer's wife also surrendered her passport while Mr. Archer was in Italy. Should the Court grant this request, Mr. Archer's wife intends to join him because there will be a number of business/social events, including a dinner among all of the participants in the various meetings that will be attended by spouses. Of course, if the Court believes it necessary, Mr. Archer will travel alone, and his wife will surrender her passport as well.

Thank you for your consideration of this request.

Respectfully,

/s/ Matthew L. Schwartz
Matthew L. Schwartz

cc:   BY ELECTRONIC MAIL

    AUSAS Brian Blais, Aimee Hector, and Rebecca Mermelstein
    U.S. Pretrial Services Officer Andrew R. Kessler-Cleary

Application granted. Mr. Archer will report daily to Pretrial Services during his trip and his children shall surrender their passports while he is out of the country. Mr. Archer's wife may accompany him. Because it contains private travel information, the exhibit attached to Mr. Schwartz's letter shall be filed under seal. So ordered.

_____
Ronnie Abrams, U.S.D.J.
July 21, 2016