# EXHIBIT 8

**U.S. Department of Justice**

*United States Attorney*
*Southern District of New York*

*The Silvio J. Mollo Building*
*One Saint Andrew's Plaza*
*New York, New York 10007*

January 30, 2017

**BY ECF**

The Honorable Ronnie Abrams
United States District Judge
Southern District of New York
Thurgood Marshall United States Courthouse
40 Foley Square
New York, NY 10007

Re:     **United States v. Devon Archer et al.,**
        **S1 16 Cr. 371 (RA)**

Dear Judge Abrams:

      The Government writes in response to the January 27, 2017 letter by defendant Devon Archer seeking (i) immediate production of a search warrant and sealed search warrant application authorizing the search of an email account utilized by the defendant; and (ii) requiring Google to delay compliance with the search warrant for "at least a period of 30 days from the date" that the search warrant and application are produced.  (Def. Ltr. at 4).  In regard to the first request, the Government will produce the search warrant and search warrant application this week.  In regard to the second request, for the reasons set forth below, the defendant's unprecedented and meritless request to delay Google's production of the search warrant results to the Government should be denied.

**Background**

      On or about December 28, 2016, the Government sought, and United States Magistrate Judge Barbara Moses issued, a search warrant (the "Search Warrant") for a variety of email accounts, including the account darcher@rosemontseneca.com, the service provider for which was Google Inc. ("Google"), and the email account darcher@rosemontcapital.com, the service provider for which was Apptix (together with Google, the "Service Providers").[1]  The application in support of the Search Warrant was filed under seal.  Although the Search Warrant directed the Service Providers to provide responsive documents within 30 days, as of the writing of this letter the Government has not received any production from Google.  The Government has now, however, received a production from Apptix.

      On or about January 13, 2017, via *ex parte* communication, the Government informed this Court of (i) the existence of the sealed Search Warrant, (ii) the fact that the Government had not

---

[1] Apptix does not appear to have informed the defendant of the existence of the Search Warrant.

yet received any documents called for by the Search Warrant, and (iii) the Government's intention to produce any such documents once received. The Government also noted that in light of the likely motion schedule, any motion to suppress resulting from the Search Warrant could likely be filed at the same time as any other motions in this case.[2]

After the time that the Search Warrant was served on Google, but before Google provided the Government with any materials whose production was mandated by the Search Warrant, Google advised the Government that, as a matter of policy, it informed accountholders whose accounts were subject to a search warrant about the fact that a search warrant had been served, unless the Government produced a non-disclosure order authorized by a court of competent jurisdiction. Here, because this matter has been indicted and because the Government intends to disclose to Archer any materials obtained pursuant to the Search Warrant upon receipt, the Government advised Google that it had no objection to Google's notification of Archer that a search warrant for emails in his account had been obtained.

On or about January 27, 2017, counsel for defendant Archer, having been informed by Google of the existence of the Search Warrant, demanded that the Government (i) provide a copy of the warrant and application; and (ii) "agree to instruct [G]oogle to forebear from producing any records related to the darcher@rosemontseneca.com account until we have had a reasonable amount of time to review the warrant and application and determine whether to seek any relief." The Government advised Archer that it would not do so, explaining that because Google had not yet produced any documents, production of the Search Warrant and Application was premature. Archer then filed the pending letter motion. Thereafter, the Government learned that the FBI received a production from Apptix, a copy of which is being prepared for the United States Attorney's Office. In light of the Government's receipt of materials pursuant to the Search Warrant, the Government is now prepared to produce the Search Warrant and Application to all defense counsel.

## Discussion

Rule 16 provides, in relevant part, that upon the defendant's request, the Government "must permit the defendant to inspect and to copy or photograph books, papers, documents . . . or copies or portions of any of these items, if the item is within the government's possession, custody, or control and: (i) the item is material to preparing the defense; [or] (ii) the government intends to use the item in its case-in-chief at trial." Fed.R.Crim.P. 16(a)(1)(E). Search warrant applications and warrants are considered documents material to the defense under Rule 16(a)(a)(c) because such items permit a defendant to challenge the validity of the search warrant and to move to suppress items seized pursuant to such warrant. *United States* v. *Chimera*, (201 F.R.D. 72, 76 (W.D.N.Y. May 3, 2001) (" . . . search warrant applications and warrants, are considered documents material to the defense under Rule 16(a)(1)(C)); *United States* v. *Feola,* 651 F. Supp. 1068, 1089 (S.D.N.Y.1987), *aff'd,* 875 F.2d 857 (2d Cir.1989) (Table), *cert. denied,* 493 U.S. 834 (1989) (defendant provided with discovery of affidavits submitted in support of wiretap

---

[2] A motion schedule will be set at the next conference on March 3, 2017.

application to permit him to challenge validity of wiretap order); *see also United States* v. *Nunez*, No. 89–CR–730, 1989 WL 161534, at *1 (S.D.N.Y. Dec. 22, 1989) (finding search warrants and supporting affidavits were not material to preparation of the defense where defendant had not set forth facts supporting that he had a privacy interest in the premises searched.)   Because the Government has now received materials from Apptix, the Search Warrant and Application are now discoverable and the Government will produce them to the defendants this week.

The defendant, however, also seeks the unprecedented ability to challenge the search warrant before the Government searches the data – and in the case of the Google results, to prevent the Government from even obtaining the materials called for by the judicially authorized Search Warrant.   The defendant cites no case law – and the Government is aware of none – supporting the notion that a defendant has a right move to quash a lawfully obtained search warrant before its execution.   In fact, the defendant confuses the question of whether the Government has a lawful right to *obtain* the materials called for by the Search Warrant – an issue already settled by the issuance of the Search Warrant and Judge Moses's determination that probable cause existed to support the issuance of the Search Warrant – and the separate and distinct question of whether the Government can lawfully *use* such evidence at trial, a question that defense counsel is welcome to raise later in the course of standard motions practice.

The arguments advanced by Archer in support of his novel attempt to quash the execution of the Search Warrant are baseless.   The defendant first argues that "[t]here is ample reason to believe that the warrant may be defective," pointing to the fact that the warrant calls for old data and calls for a wide range of documents.   (Def. Ltr. at 2).   Such arguments are simple speculation – probable cause frequently supports the seizure of dated emails and of large volumes of documents.   But even assuming such arguments had merit, and they do not, these arguments speak to the suppression issue – whether the Government can use such materials at trial – not the question of whether the Government has a lawful right to obtain such materials in the first place.   Archer's contentions are run-of-the-mill arguments which are appropriately made in the ordinary course as part of a motion to suppress.   Nothing about such suppression arguments justifies the extraordinary remedy of preemptively preventing execution of a lawfully obtained, judicially authorized search warrant.

Recognizing that he cannot presently demonstrate any defect in the Search Warrant ("we make no such allegations because we have been unable to review the unredacted warrant and application"), the defendant further argues that the potential prejudice is heightened because the email account in question contains hundreds of attorney-client communications.   This too, however, is a common occurrence in email search warrants and one the Government is well equipped to handle.   Having been apprised that the defendant's email contains privileged emails, the Government will – as it routinely does – use a wall AUSA or taint team to review the defendant's emails for privilege.[3]   This is more than sufficient.   *See, e.g.*, *United States* v. *Lumiere*, 16 Cr. 483, 2016 WL 7188149, at *6-7 (S.D.N.Y. Nov. 29, 2016) (JSR) (case agent's

---

[3] If the defendant would like to provide a list of attorneys with whom he communicated, the Government will specifically segregate such communications for privilege review.

review of emails while "[keep]ing an eye out" for defense counsel's name was sufficient where agent acted in good faith and in conformity with the warrant).

The defendant claims, however, that any procedure involving a wall AUSA or taint team is inadequate, citing two cases in which district courts expressed concerns about the practice.[4] But as this Court itself has previously recognized, none of these cases require an alternate methodology or justify suppression where such a method has been used. *United States* v. *Feng Ling Liu, et al.*, 12-Cr-934, 2014 WL 101672 (S.D.N.Y. Jan. 10, 2014) (RA); *see also*, *United States* v. *Hunter*, 13 F. Supp. 2d 574, 583 (D. Vt. 1998) (footnote omitted) (holding that the "screening procedure designed by the government was an adequate safeguard against the seizure of [privileged] papers.")

In short, the defendant seeks extraordinary relief in an ordinary situation. There is simply no justification for such an unprecedented result. The issuance of the Search Warrant by Judge Moses settles the issue that the defendant seeks to challenge – whether the Government has a lawful right to obtain the emails called for by the Search Warrant. The defendant will have every opportunity, during motion practice, to seek to cabin or limit the Government's ability to use the fruits of the search at trial, which is the specific remedy contemplated in the Federal Rules of Criminal Procedure for an improper or unconstitutional search. *See* Fed. R. Crim. P. 41(h) ("A defendant may move to suppress evidence in the court where the trial will occur, as Rule 12 provides.").

<div style="margin-left: 40%;">

Respectfully submitted,

PREET BHARARA
United States Attorney


By: _/s/ Rebecca Mermelstein_____
    Brian R. Blais
    Aimee Hector
    Rebecca Mermelstein
    Assistant United States Attorneys
    (212) 637-2521/2203/2360

</div>

cc:    All counsel of record (by ECF)

---

[4] Both cases cited by the defendant also concern searches of law firms in which the privilege issues were far more complicated, not only because a law firm is, by its nature, rife with privileged materials, but also because the materials had to be reviewed in light of the crime-fraud exception to privilege. The search of a single individual's email account, used in some instances to communicate with his own attorneys, is far less complicated.