# EXHIBIT 24

```
                UNITED STATES DISTRICT COURT
                SOUTHERN DISTRICT OF NEW YORK
                ------------------------------x

                UNITED STATES OF AMERICA,

                            v.                      16 CR 371 (RA)

                JOHN GALANIS, et al.,

                            Defendants.

                ------------------------------x
                                                    New York, N.Y.
                                                    August 3, 2017
                                                    2:30 p.m.


                Before:

                                HON. RONNIE ABRAMS,

                                            District Judge


                                    APPEARANCES

                JOON H. KIM
                     Acting United States Attorney for the
                     Southern District of New York
                REBECCA MERMELSTEIN
                BRIAN ROGER BLAIS
                ANDREA GRISWOLD
                     Assistant United States Attorneys

                SHER TREMONTE LLP
                     Attorneys for Defendant Hirst
                BY:  NOAM KORATI BIALE

                ROBERT MOORE (APPEARING FOR DAVID TOUGER)
                     Attorney for Defendant Galanis

                MORVILLO LLP
                     Attorneys for Defendant Morton
                BY:  GREGORY ROBERT MORVILLO
```

```
 1
 2                       APPEARANCES (Cont'd)

 3   BOIS, SCHILLER & FLEXNER LLP (NYC)
          Attorneys for Defendant Archer
 4   BY:  MATTHEW LANE SCHWARTZ

 5   PAULA JACLYN NOTARI
             -AND-
 6   ABRAHAM JABIR ABEGAZ-HASSEN
          Attorneys for Defendant Cooney
 7

 8   ALSO PRESENT:   SHANNON BIENIEK, FBI

 9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
```

1  (Case called)
2  THE COURT: If you all could just please state your
3  appearances, and then for defense counsel, just note for the
4  record if your client has waived his appearance.
5  MS. MERMELSTEIN: Good afternoon, your Honor. Rebecca
6  Mermelstein, Brian Blais, and Andrea Griswold for the
7  government. With us at counsel table is Shannon Bieniek with
8  the FBI.
9  THE COURT: Good afternoon, all.
10  MR. SCHWARTZ: Good afternoon, your Honor. Matthew
11  Schwartz for Defendant Devon Archer. Mr. Archer has waived his
12  appearance today.
13  THE COURT: Good afternoon.
14  MR. MOORE: On behalf of Defendant John Galanis,
15  Robert Moore filling in today for David Touger. Mr. Galanis
16  has waived his appearance, your Honor.
17  THE COURT: Good afternoon.
18  MS. NOTARI: Good afternoon, your Honor. Paula Notari
19  on behalf of Bevan Cooney. I am with my cocounsel, Abraham
20  Hassan, who is sitting next to me. Mr. Cooney has waived his
21  appearance.
22  MR. BIALE: Good afternoon, your Honor. Noam Biale
23  for Gary Hirst who is present to my right.
24  THE COURT: Good afternoon to all of you.
25  MR. MORVILLO: Good afternoon, your Honor. Gregory

1  Morvillo on behalf of Michelle Morton who has waived her
2  appearance.
3       THE COURT:  Good afternoon to you as well.
4       So we have everyone here.  I wanted to discuss the
5  motions filed by Defendants Archer and Cooney on July 26 and 27
6  respectfully.
7       Just for the record, the government has obtained
8  materials from email accounts associated with Mr. Archer and
9  Mr. Cooney pursuant to a search warrant.  It is in the process
10 of reviewing those materials for responsiveness to the warrant.
11      However, with the exception of a set of documents that
12 were segregated for a privilege review, the government has
13 produced all of the materials obtained pursuant to the warrant
14 to the various codefendants in this case without regard to
15 responsiveness.  Many of these documents have no relevance to
16 the facts of the case and are personal and/or confidential in
17 nature.
18      The government apparently made this production while
19 mistakenly believing that it had Mr. Archer and Mr. Cooney's
20 consent, and according to the government, the production was
21 made out of a concern for the government's possible Brady
22 obligations.
23      I've read your letters.  If there is anything else you
24 want to add here today before I rule, I'm happy to hear you
25 out.

1        MS. MERMELSTEIN: Your Honor, I'm happy to say, I
2   suppose, as much or as little as you would like. I think
3   that -- you can cut me off if this isn't helpful.
4        I think that a facility with the kind of practical
5   realities of the way in which these things work is incredibly
6   important to understanding the extraordinary, unprecedented
7   requirements that Mr. Schwartz seeks to impose on the
8   government and the practical effect that that would have on the
9   government's ability to investigate white-collar crime.
10       I think that what he has essentially suggested is that
11  the government need either provide search terms to the service
12  provider and then be limited to only those documents in its
13  review or to review the entirety of every email in every email
14  account for which it obtains a search warrant, notwithstanding,
15  among other things, that at the time the government obtains a
16  search warrant, it has no way to know the volume of what it's
17  going to get.
18       That would be an extraordinary remedy in a universe
19  that is under the umbrella of Fourth Amendment reasonableness.
20  I think that what the government -- I'm happy to speak in
21  vastly more detail, if it's helpful, about all of the reasons
22  why the proposal is wildly impractical, both legally and, so to
23  speak, practically.
24       I think at its heart, it would be fundamentally an
25  enormous shift from what "reasonable" means, and it would

1    really undercut the government's opportunity to investigate not
2    just white-collar cases but any case where it needed to get an
3    email search warrant.
4            If your Honor wants the sort of nitty-gritty details,
5    I'm happy to go there.  If you're ready to rule, I'm happy to
6    sit down.
7            THE COURT:  It seems like a protective order hadn't
8    even been signed.
9            MS. MERMELSTEIN:  Your Honor, I agree that it would
10   have been better to get a protective order.  I will note that
11   leaving aside the misunderstanding -- look.  There clearly was
12   a misunderstanding here.  The purpose of providing that advance
13   notice to defense counsel was the government's attempt to make
14   sure we didn't end up exactly where we now are.
15           Certainly the defendants understood that the
16   responsive emails were going to be produced to all defendants,
17   and they too didn't ask for a protective order, and I think
18   that was just a mistake all around.  There should have been a
19   protective order.
20           I don't think that issue really impacts the
21   reasonableness of the way in which the government executes
22   search warrants and reviews the contents of those search
23   warrants, and I think that as a practical matter, if the Court
24   were to rule that every email obtained pursuant to a search
25   warrant, responsive or nonresponsive, was in the government's

1   possession for Brady purposes but could not be produced to
2   codefendants, it would, in essence, be a ruling that the
3   government, if it wanted a search warrant, had to be prepared
4   to review every single email out of hundreds of thousands of
5   emails.
6           THE COURT:  I just want to stop you there, if I can,
7   and I'll have you say anything else you want to say in a
8   minute.
9           I really want to turn to the defendants, and I asked
10  all of you to be here because I want to hear from counsel for
11  the codefendants with respect to the Brady issue whether any of
12  the defendants are taking the position that the government has
13  the obligation to review materials that are deemed to be
14  outside the scope of the warrant.
15          Does anyone in this room think the government is
16  obligated to review materials that it's not permitted to review
17  once it makes a determination that it's not responsive to the
18  warrant?
19          MR. SCHWARTZ:  Your Honor, Matthew Schwartz for David
20  Archer.  I'm not even taking that position.  The point that I
21  made in the papers is that Brady violations, as the government
22  is going to tell us when we all make our Brady motions in
23  discovery, are viewed retrospectively.  That's not an issue in
24  which the Court needs to engage.
25          No one has to lay down for the government a roadmap of

1    how it complies with its Brady obligations.  That's its own

2    obligation.  It always makes a determination --

3                THE COURT:  I'm asking you.  I understand you think

4    it's an advisory opinion.  I'm asking the codefendants in

5    particular if anyone thinks that the government has an

6    obligation or if it's even permitted to review material once it

7    determines that it's nonresponsive to a warrant for Brady.  If

8    the answer is no, then I think this makes this a lot simpler.

9                MR. SCHWARTZ:  I would say in this case, given that

10   the government has already exceeded the bounds of the warrant

11   and seized material that is nonresponsive and produced it --

12               THE COURT:  That's pursuant to a misunderstanding

13   based on your email.  We can litigate the scope of the Fourth

14   Amendment issue later.

15               MR. SCHWARTZ:  Whether or not it was a

16   misunderstanding is beside the point right now.  That happened,

17   and having happened, I think we're in a different situation

18   than the ordinary one where the government only seizes that

19   which they were allowed to seize.

20               That doesn't mean necessarily that they have to make

21   that search, but it certainly does create additional risk for

22   the government, which will be assessed retrospectively.

23               THE COURT:  So, just to be clear, your position is

24   that because of that production -- I assume the government is

25   going to say it was understanding that you consented to the

1   seizure of that material and the production of that material.
2   But it's your position in this case that they now have an
3   obligation to review that material for Brady that you're asking
4   that no one review?
5              I'm sorry.  Your position is unclear to me.
6              MR. SCHWARTZ:  Right, because I'm trying not to
7   articulate a position about the contours specifically of what
8   the government has to review.  It is always the government's
9   obligation that they have to review everything in their
10  possession --
11             THE COURT:  But do you view the material that they're
12  not permitted to review to be in their possession for the
13  purposes of Brady?  A straight answer would be helpful.
14             MR. SCHWARTZ:  Yes.  They seized that which was in
15  excess of what the warrant permitted.  So, yes.  It is in their
16  possession.
17             THE COURT:  So are you consenting to a review of that
18  material for purposes of Brady?
19             MR. SCHWARTZ:  I'm not consenting to anything,
20  your Honor.  The government has an obligation to obey the
21  warrant that it sought and it obtained.  It didn't do that, and
22  now it's created a host of practical problems.  With respect,
23  neither you nor I should be getting them out of that.  This is
24  something that they're going to have to navigate.
25             It may be a total nonissue, or it may be an issue, and

1  it will be something that we'll litigate after the fact.
2  That's the realities of Brady litigation.
3    THE COURT:  I'm not going to give the government
4  specific guidance as to how to make a Brady determination.
5  That being said, I think when you're managing a case, it's
6  helpful to set contours, and I don't hear anybody else taking
7  the position that the government has an obligation to review
8  material that it's not entitled to review, according to you --
9  and I agree with that -- once the determination is made that
10 it's not responsive to the warrant.
11   Articulate for me one more time why you think the
12 government has an obligation to review this, because it's
13 already produced it to you pursuant to your email indicating
14 that all emails could be produced.  I understand it's a
15 misunderstanding as to what that means or meant, but that is
16 your position.  Is that right?
17   MR. SCHWARTZ:  Because the government has already
18 exceeded the scope of the warrant, it takes this case away from
19 every other case where the government obtains a warrant for
20 electronic information and does a responsiveness review and its
21 Brady obligations might be cabined to the stuff that is
22 responsive to the warrant.
23   The government has already violated the warrant here
24 and seized more than it is permitted to.  That creates
25 additional problems for them.  That's my position.

1   MS. MERMELSTEIN:  I'm sorry to interrupt, your Honor.
2   I recognize we're not litigating suppression now.  Mr. Schwartz
3   has now -- I'm not sure he has answered your question, but he
4   has said the government has exceeded the scope of the warrant
5   and violated it about 17 times.  That's not true.
6            The government got a warrant that entitled it to
7   obtain every email for a designated timeframe for these email
8   accounts.  Rule 41 explicitly allows that when you have this
9   kind of voluminous material, the government gets to take
10  everything and then conduct a review.
11           That review is ongoing.  The government could decide
12  tomorrow that instead of using search terms, it was going to
13  read every email.  There is no practical way to do that.
14           There are hundreds of thousands, but that would be
15  legally appropriate, and it would not exceed the scope of the
16  warrant to read every email to make a determination as to
17  responsiveness, and reasonableness is of course fact specific.
18           So, if you got an email search warrant and it had
19  5,000 emails, you might very well decide that was the best way
20  to proceed.  The notion that somehow because the government
21  obtained ultimately nonresponsive emails it has exceeded the
22  scope of the warrant I think is just incorrect as a matter of
23  fact and of law.
24           The government has deemed certain emails
25  nonresponsive.  Any email that doesn't hit on a search term

```
 1  it's not going to look at, and it hasn't looked at.  Those
 2  emails were produced to defense counsel.
 3          I don't know if defense counsel has actually even
 4  started looking at them.  They only had them very briefly
 5  before your Honor told everyone to stop.
 6          But I don't think that that disclosure, which was made
 7  based on a good-faith understanding that no defendant objected
 8  having solicited whether or not anyone did -- I'm not
 9  suggesting that defense counsel is disingenuously saying they
10  didn't understand.  They clearly didn't.
11          That production in no way suggests that the government
12  has exceeded its authority under the warrant.  I don't think
13  this is in any fashion any different than every single email
14  search warrant that is done every day in this district.
15          So I do think that to the extent that the defendant's
16  position is that legally these things are in the possession of
17  the government, that is something that is appropriate to sort
18  out now.
19          I think it's also factually helpful to know if the
20  defendants had actually started looking at any materials before
21  your Honor told them not to.
22          THE COURT:  Why don't we just take a break for a few
23  minutes, and I'll be back.  Thanks.
24          (Recess)
25          THE COURT:  I am ready to rule.
```

1      MS. NOTARI: Your Honor, may I be heard?

2      THE COURT: Yes.

3      MS. NOTARI: In speaking with my co-counsel, one of
4  the concerns that's not been addressed is the expectation on
5  the defense here is essentially to do a responsive review.
6  We've been now --

7      THE COURT: Can we deal with this issue first. If you
8  were provided a new production that just had emails that were
9  responsive to the warrant, are you still going to object?

10     MS. NOTARI: No.

11     THE COURT: Although I don't weigh in on the Fourth
12 Amendment argument at this time, the Court grants Archer and
13 Cooney's motion.

14     All defendants are ordered to return or destroy the
15 government's production materials obtained pursuant to the
16 warrant. Consistent with its obligation under Federal Rule of
17 Criminal Procedure 16, the government is ordered to replace
18 this production with a new production consisting solely of
19 materials responsive to the warrant, and it is to do so on a
20 rolling basis.

21     With respect to the government's Brady obligations, as
22 Archer rightly notes in his submission, the government cannot
23 "seize or use files unless they are within the scope of the
24 warrant." That's at page 5, citing the Matias case, 836 F.2d
25 744, 747.

1          Accordingly, the government need not and may not
2   review files or emails for Brady or otherwise once they are
3   determined to be nonresponsive.
4          Nonetheless, if the government were to discover Brady
5   material during the course of its responsiveness review, such
6   material must be disclosed in time for its effective use,
7   United States v. Coppa, 267 F.3d 132, 135.
8          I'll note for the record that no defendant, other than
9   Mr. Archer, who has the entire email account in his possession
10  because, of course, it is his or at least with respect to his
11  email accounts, has taken the position that the government has
12  an obligation to review materials that are deemed to be outside
13  the scope of the warrant.  So that is my ruling.
14         Do you still have a follow-up question or point,
15  Ms. Notari?
16         MS. NOTARI:  No.
17         THE COURT:  Thank you.  We are adjourned.
18         (Adjourned)