# EXHIBIT D

FD-302 (Rev. 5-8-10)

**FEDERAL BUREAU OF INVESTIGATION**

Date of entry 01/11/2018

On December 6, 2017, WILLIAM CONNELL (CONNELL), [redacted] was interviewed via video telecommunication at the United States Attorney's Office (USAO), Southern District of New York (SDNY), 1 Saint Andrew's Plaza, New York, NY 10007 [redacted] Accompanying CONNELL was his attorney, Keith Miller, of Perkins Coie LLP. After being advised of the identities of the interviewing officials and the nature of the interview, CONNELL provided the following information:

[redacted]

[redacted]

Investigation on 12/06/2017 at New York, New York, United States (, Other (Video Telecommunication))

File # [redacted] Date drafted 12/06/2017

by [redacted]

This document contains neither recommendations nor conclusions of the FBI. It is the property of the FBI and is loaned to your agency; it and its contents are not to be distributed outside your agency.

FD-302a (Rev. 05-08-10)

Continuation of FD-302 of (U) Interview of William Connell, On 12/06/2017, Page 2 of 6

In approximately 2014, ARCHER of ROSEMONT CAPITAL (ROSEMONT) was going to be the primary investor in BURNHAM.

USAO_SDNY_12834

FD-302a (Rev. 05-08-10)

Continuation of FD-302 of (U) Interview of William Connell , On 12/06/2017 , Page 3 of 6

FD-302a (Rev. 05-08-10)

Continuation of FD-302 of (U) Interview of William Connell , On 12/06/2017 , Page 4 of 6

There came a final letter that was satisfactory to CONNELL and the solution to GALANIS's lack of involvement. Looking back now, CONNELL felt ARCHER broke that promise regarding GALANIS's involvement. From approximately April 2014 through October 2014, CONNELL thought ARCHER was acting in good faith. The letter replies were semantics done by a lawyer. ARCHER had CONNELL's full confidence. CONNELL thought ARCHER was the answer to the company for the financial support they needed.

USAO_SDNY_12836



FD-302a (Rev. 05-08-10)

[redacted]

Continuation of FD-302 of (U) Interview of William Connell , On 12/06/2017 , Page 5 of 6

[redacted]

[redacted]

[redacted]

CONNELL was shown a document marked ID BURNHAM 0049-0051. CONNELL's reaction was to do the nuclear option for the mutual funds. The nuclear option meant get the mutual funds as far away as possible from anything to do with ARCHER, GODFREY and JON. [redacted] CONNELL was very upset because the promises by ARCHER were not kept and CONNELL was tired of it. CONNELL was not okay with still having to talk about GALANIS at that point in the process. CONNELL did not know the significance of CODE REBEL. What was occurring in the securities firm was

a sign to move the mutual funds away from JON. CONNELL expected ARCHER to cry and be embarrassed about GALANIS being involved and indicted. ARCHER was subdued, humbled and more embarrassed than ever. ARCHER had his head down, hands folded and appeared less confident than normal. ARCHER was dressed more formal than usual. ARCHER did not say he lied or misrepresented. CONNELL did not feel ARCHER was being a bad guy or lying. ARCHER was being semantic. CONNELL no longer trusted ARCHER. ARCHER's response was factual followed by we will make this right. ARCHER expressed regret but glossed over it. ARCHER did not give any details and did not elaborate. ARCHER did not offer an apology.

CONNELL sent an e-mail to ARCHER and GODFREY after the move to RMB CAPITAL and wished them well, to keep fighting and hoped to see them in the future. CONNELL had not had any other contact with ARCHER besides the e-mail CONNELL sent.

CONNELL believed ARCHER was too busy to have anything to do with the GALANIS issue. CONNELL did not think ARCHER was being deceitful or deliberately lied.