I5N3GAL1

```
 1    UNITED STATES OF AMERICA
      SOUTHERN DISTRICT OF NEW YORK
 2    ------------------------------x

 3    UNITED STATES OF AMERICA,

 4                  v.                          16 Cr. 371 (RA)

 5    JOHN GALANIS, et al.,

 6                    Defendants.

 7    ------------------------------x

 8                                           New York, N.Y.
                                             May 23, 2018
 9                                           9:00 a.m.

10
      Before:
11
                         HON. RONNIE ABRAMS,
12
                                             District Judge
13

14                          APPEARANCES

15    ROBERT KHUZAMI
           Acting United States Attorney for the
16         Southern District of New York
      BY:  BRENDAN F. QUIGLEY
17         REBECCA G. MERMELSTEIN
           NEGAR TEKEEI
18             Assistant United States Attorneys

19    PELUSO & TOUGER
           Attorneys for Defendant John Galanis
20    BY:  DAVID TOUGER

21    BOIES, SCHILLER & FLEXNER LLP (NYC)
           Attorneys for Defendant Devon Archer
22    BY:  MATTHEW LANE SCHWARTZ
           LAURA HARRIS
23

24

25
```

I5N3GAL1

1    Appearances (Cont'd)

2

3    PAULA J. NOTARI
          Attorney for Defendant Bevan Cooney
4               - and -
     O'NEILL and HASSEN
5          Attorneys for Defendant Bevan Cooney
     BY:  ABRAHAM JABIR ABEGAZ-HASSEN
6

7

8    Also present:  Kendall Jackson, Paralegal
                     Ellie Sheinwald, Paralegal
9                         Eric Wissman, Paralegal
                          Special Agent Shannon Bienick, FBI
10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

I5N3GAL1

1            (In open court; jury not present)

2            THE COURT:  Before the prospective jurors arrive,

3    there are two issues we need to address.  First is to the

4    disclosure issue.

5            I'm not going to require the defense to disclose the

6    exhibits it intends to introduce in its case in chief on cross

7    of government witnesses in advance.  I know that the defense in

8    *Silver* engaged in reciprocal discovery of this sort, but not

9    only was that a retrial, but I've since learned that the

10   defense consented to that procedure, which is obviously not the

11   case here.  I have not been able to speak with Judge Gardephe

12   about the other case the government referenced.

13           I'll also say, though, that I don't think it is

14   appropriate for me to order the government to do it.  I think

15   it's best practice to do it.  I hope that you'll still advise

16   the defendants of which exhibits you intend to use with the

17   witnesses in advance, because I think it will significantly

18   speed up the trial.  But I'm not going to order you to do it.

19           So that's my ruling.  In short, I'm not going to order

20   either side to do it.  But, I hope that the government at the

21   very least will do so.

22           So next, as for the evidence relating to Michael

23   Milken, my view on this issue has evolved in light of the

24   parties' most recent submissions about how this evidence would

25   come in, and frankly the questioning of prospective jurors

I5N3GAL1

1    yesterday.

2            So I'm going to grant Mr. Archer's motion in limine.

3    It would be a different story in my view if the government

4    could call a witness who was a party to one of the e-mails to

5    testify about what he understood or she understood the

6    reference to mean or who could otherwise testify that he or she

7    had communications with one of the defendants in which Milken

8    was referenced, and therefore could better speak to the

9    defendant's state of mind.  But I'm not going to permit just

10   any witness to testify generally about Milken's reputation.

11           The government suggested that I could take judicial

12   notice of his conviction, but to present the jury with a fair

13   and balanced view of his admittedly complicated past, would

14   also require me to take notice of his success in the high-yield

15   junk bond industry, to which I know the government consents, as

16   well as his philanthropy and efforts with reference to the

17   Milken Institute which is referenced in one of the text

18   messages comprising Government Exhibit 3004.

19           To fully explain Government Exhibit 2217, moreover, I

20   would also likely need to take notice of Leon Black's

21   reputation and his relationship with Mr. Milken, while they

22   both worked at Drexel in the 1980s, and I don't think that

23   would be appropriate.  And I'm frankly not even going to

24   dignify the government's suggestion that Judge Wood be called

25   to testify as a witness.

I5N3GAL1

1          In addition, upon further consideration of the e-mails

2    at issue, I find it increasingly likely that the references to

3    Mr. Milken were not a reference to his criminal conviction,

4    particularly, because as I understand it, his criminal activity

5    did not relate to high-yield junk bonds, but instead involved

6    efforts to, among other things, violate the rules on capital

7    that governed his stock trading firm, file inaccurate financial

8    statements with government regulators, and to inflate the price

9    of a stock.  Particularly because these e-mails clearly relate

10   to WLCC bonds, it seems more likely that Mr. Cooney was in fact

11   referring to Mr. Milken's career in the bond industry, a

12   finding bolstered by the similar reference to Leon Black, a

13   manager of the Apollo private equity firm who, as far as I

14   know, has never been alleged to have engaged in criminal

15   activity.

16          While the government is of course correct that it is

17   generally for the jury to decide between competing inferences,

18   here there appears to be no viable way for the jury to have all

19   the information it would need to adequately make that

20   determination.

21          This is, however, a fair topic for cross-examination

22   in the event that either Mr. Archer or Mr. Cooney were to

23   testify.

24          MR. QUIGLEY:  Your Honor, just so we understand your

25   Honor's ruling.  So on 2217 then, is it correct that we're

I5N3GAL1

1    still allowed to offer the exhibit, we just have to redact --

2               THE COURT:  No, I think you should redact the

3    reference to Milken.

4               MR. QUIGLEY:  Understood.  But the rest of the

5    e-mail --

6               THE COURT:  Just the reference to Milken.

7               MR. QUIGLEY:  Understood.

8               THE COURT:  Just to complete the ruling for the

9    record, in light of the absence of sufficient evidence that it

10   is probative of Mr. Cooney's intent, I find that the references

11   contained in the e-mails do run afoul of 403.  I'm concerned

12   that jurors, some of whom were questioned yesterday, are more

13   likely to be aware of his high-profile guilty plea than his

14   innovation of high-yield junk bonds.  That there is a

15   substantial risk of unfair prejudice and/or confusion.  At the

16   very least, both risks substantially outweigh any probative

17   value these references may possess.

18               So, in terms of the exhibits, my understanding, based

19   on Mr. Archer's motion, is that you are only, you only made a

20   motion to redact Exhibits 2217, 2204, and 3004; is that right,

21   those three?

22               MR. SCHWARTZ:  Your Honor, I don't have the papers in

23   front of me.  I think that we explicitly set out in our motion

24   papers the exhibits, but I'll certainly talk to the government.

25               THE COURT:  Look at that.  The question, I had thought

I5N3GAL1

1    you did not object to a particular exhibit, which was 3226.  I

2    understand you don't have it in front of you, but go back and

3    look so we're all on the same page on that in advance.  I'll

4    note if we do send a copy of the indictment back then we'll

5    need to redact paragraph 11C.

6              MR. SCHWARTZ:  Thank you.  Just one technical thing I

7    raised with the government but I haven't heard a response.

8    Thus far where they've been redacting things, they've been

9    blacking them out.  We've asked them to white them out so as

10   not to call attention to the redactions.  If that's technically

11   hard for them, we're happy to assist.

12             But the whole point of the redactions is to excise

13   that from the jury and we think the big black box just calls

14   attention to the fact that the jury is not able to see

15   something.

16             THE COURT:  Can you do that, can you do the whiting

17   out?

18             MR. QUIGLEY:  Our concern is that makes the e-mail

19   look like the formatting is weird.

20             THE COURT:  Try your best.  And if it is a technical

21   issue and it is something that Boies can do and you all can't

22   do, why don't you work together on that.  But, I don't see why

23   that should be an issue.

24             MR. QUIGLEY:  Okay, your Honor.

25             MR. SCHWARTZ:  Thank you, your Honor.

I5N3GAL1

1          THE COURT:  Any other issues?  My inclination is to

2     bring the jury in, even just to start with whomever is here and

3     go out of order.  We don't yet have a new pool of prospective

4     jurors, so what I was inclined to do is ask the individual

5     questions of all the people that remain from yesterday who were

6     not tainted, do them ideally in the order of their number, but

7     to the extent people aren't here yet, go a little out of order

8     and have that group take a break while we read the whole

9     questionnaire with the new prospective jurors.  All right?

10          MS. MERMELSTEIN:  One issue, your Honor, to revisit

11     from yesterday.

12          Mr. Touger indicated at the end of yesterday that in

13     the event the government suggested in its opening that the

14     Wakpamni Lake Community or the Wakpamni Lake Community

15     Corporation were victims of this crime, that he intended to

16     object.  And to the extent it was not sufficiently clear that

17     there is a difference between the Wakpamni Lake Community

18     Corporation and the Wakpamni Lake Community, he intended to

19     object and was going to move for a mistrial.  That's fine.  I

20     mean, the government --

21          THE COURT:  He shouldn't do that in front of the jury.

22          MS. MERMELSTEIN:  Yes.  So we ask your Honor preserve

23     for the record any objection, but it not be made at the

24     opening.

25          THE COURT:  We'll do that at sidebar.  Your objection

I5N3GAL1

1    is preserved and you can make it again at sidebar, but I don't

2    want to interrupt the government's --

3              MR. TOUGER:  Just so the record is clear, my argument

4    is not about the WLCC.  It is about Wakpamni Lake Community.

5    Not the corporation.  It is about the community.  Those are two

6    separate entities and that's what the government seems to

7    conflating them into one and they're not.  One is a corporation

8    and one is people.

9              THE COURT:  All right.  Understood.  I also,

10   Mr. Touger, wanted to remind you that my law clerk has a set of

11   government exhibits and that Mr. Galanis is free to consult

12   them at any point, if you want.

13             MR. TOUGER:  Are those them?

14             THE COURT:  Yes.  Just feel free to use them and show

15   them to him if you don't have an extra copy.  So no one's here

16   yet?

17             THE DEPUTY CLERK:  No, we have some.  Just not all.

18             THE COURT:  I think unless anyone has any issues, I

19   think we should just start with whomever we have.

20             (Jury selection continues under separate cover)

21             (Continued on next page)

22

23

24

25

I5n6gal2

1            (Open court; jury present)

2            THE COURT:  To the jury, welcome.

3            To all of you, thank you so much for your time and

4       attention.  I know this is a difficult process as I said

5       before, but it is a very important one.  I am truly grateful

6       for your willingness to serve on this jury.

7            Ms. Cavale is going to escort you out with the Court's

8       thanks.

9            (Jury venire excused)

10           THE COURT:  First of all, thank you.  We have spent a

11      lot of time together, but I am grateful that you are doing your

12      duty as citizens.  So thank you.

13           We're going to swear you in as jurors when Ms. Cavale

14      comes back.  For a few minutes now I am going to give you some

15      general instructions and tell you a little bit how the process

16      is going to work and then I will let you go home for the day.

17           It will be your duty to find from the evidence what

18      the facts are.  That is your duty as jurors.  You and you alone

19      are the judges of the facts from the evidence presented at

20      trial.  You will decide what happened here and you will then

21      have to apply those facts to the law as I will give it to you

22      at the end of the case.  You must follow the law as I explain

23      it whether you agree with it or not.

24           As I said earlier nothing I say or do during the trial

25      is intended to indicate what the verdict should be nor is it

I5n6gal2

evidence in any way.  So please don't speculate as to what I may be thinking.

        The evidence from which you will find the facts will consist of the testimony of the witnesses who will sit in the witness box and documents and other things that are received into the record as exhibits.  The lawyers may also agree or what we say stipulate to certain facts.  When they do that, when they stipulate to certain facts, you are to accept those facts as true although it will be for you to decide the weight, if any, to be given to those facts.

        Certain things are not evidence and must not be considered by you as evidence.  I am going list them for you. First, statements, arguments and questions of the lawyers are not evidence nor are the statements as I said that I make or ask of a witness.  It is the answers to those questions that are evidence.  Objections to questions are not evidence. Lawyers have an obligation to their client to make an objection when they believe that evidence is improper under our Federal Rules of Evidence.  So you should not be influenced by an objection or my ruling on it.

        If the objection is sustained, the witness will not be permitted to answer the question and you must ignore the question.  If the objection is overruled, the witness will be permitted to answer the question and you should treat the answer like any other.  If you're instructed that an item of

I5n6gal2

evidence is being received for a limited purpose only, you must
follow that instruction.  If I strike an answer or instruct you
to disregard an answer, then that testimony is not evidence and
cannot be considered by you.

Also if you see or hear anything outside this
courtroom, it is not evidence and must be disregarded.  Your
verdict must be based solely on the evidence or lack of
evidence presented in this courtroom at trial.

One of your most important tasks is going to be to
evaluate the credibility of the witnesses who will testify here
at trial.  It will be up to you to decide which witnesses to
believe, which witnesses not to believe, and how much of any
witness's testimony to accept or to reject.  I will give you
some guidelines for determining the credibility of witnesses at
the end of the case.  In the meantime, please listen carefully
to the witnesses as they testify for you will be called upon to
evaluate their credibility at the end of trial.

It is important to remember that this is a criminal
case.  In such cases, the government bears the burden to prove
each essential element of the crimes charged beyond a
reasonable doubt.  The burden never shifts to the defendants
for the simple reason that the law presumes every defendant to
be innocent and never imposes upon a defendant in a criminal
case the burden or duty of the calling any witness or producing
any evidence.  In other words, as to each charge against each

I5n6gal2

defendant, the defendant starts with a clean slate and is

presumed innocent until such time, if ever, that you as a juror

are satisfied that the government has proven that particular

defendant's guilt on that charge beyond a reasonable doubt.

Now, the question that obviously and naturally arises

is what is reasonable doubt.  The words almost define

themselves.  It is a doubt based on reason, judgment,

experience and common sense.  It is a doubt that a reasonable

person has after carefully weighing all of the evidence.  Proof

beyond a reasonable doubt must therefore be proof of such a

convincing character that a reasonable person would not

hesitate to rely and act upon it in the most important of his

or her affairs.  Beyond a reasonable doubt does not mean beyond

all possible doubt.  It is practically impossible for a person

to be absolutely and completely convinced of any disputed fact

that by its nature cannot be proved with mathematical

certainty.  In the criminal law, guilt must be established

beyond a reasonable doubt but not all possible doubt.

If after a fair and impartial consideration of all of

the evidence you do have an abiding belief of a defendant's

guilt and believe that you will be willing to act upon without

hesitation in important matters in the personal affairs of your

own life, then it is your sworn duty to convict that particular

defendant on that count in the indictment.  If, however, you do

not have an abiding conviction of the defendant's guilt, if you

I5n6gal2

1    have such a doubt as would cause you to hesitate before acting

2    in matters of importance to yourselves, then you have a

3    reasonable doubt and in that circumstance, it is your sworn

4    duty to return a verdict of not guilty on that count as to that

5    defendant.

6           Now a few words about your conduct as jurors.  As I

7    noted previously during the trial, you're not to discuss the

8    substance of the case with anyone and nor are to you permit

9    anyone to discuss it with you.  Until you retire to the jury

10   room at the end of the case to deliberate, you're simply not to

11   talk about the case.  Don't even discuss the case with each

12   other until you begin your actual deliberations.  That is very

13   important.  If you see the lawyers in a case or the witnesses

14   or court staff, don't speak to them.  They are not going to

15   speak to you.  They are not being impolite.  They are simply

16   following my instructions and are not permitted to talk to you.

17          If anyone should try to talk to you about this case,

18   please bring it to my attention by telling Ms. Cavale, but

19   don't tell anyone else.  Don't tell the other jurors.  Don't

20   read about or talk about the facts or circumstances of this

21   case whether in person or online or on social media.  Don't

22   Tweet or make comments about any of the substance of the case

23   or anything you learn about the trial until after the trial is

24   over and deliberations are over and then it will be up to you

25   if you want to talk about it or if you don't.

I5n6gal2

1          You are instructed not to read, listen to, watch media

2     reports, television, newspapers, radio, Internet about the case

3     or similar cases or any of the individuals involved.  Again,

4     the reason for that is that you cannot be influenced by

5     anything you might see or hear outside the courtroom.  If you

6     inadvertently come across a news report relating to this case

7     or a similar case, again just stop reading, stop listening,

8     stop watching and tell Ms. Cavale and again no one else

9     including your fellow jurors.

10          I think I already said this but, don't do any research

11     or investigation into the case or anything touching on it or

12     any of the names or places that I mentioned.

13          If you do recognize someone in the courtroom during

14     the course of the trial, please let Ms. Cavale know.  If it

15     occurs while the trial is in session, raise your hand.

16          Finally, keep an open mind throughout the trial and

17     reserve judgment until after all of the evidence is in.  Until

18     you have heard all of the evidence and the closing arguments

19     and my instructions on the law, you really are not in a

20     position to reach any conclusions.  Therefore, do keep an open

21     mind until you retire to deliberate and have really completed

22     those deliberations.

23          I do let jurors take notes during the course of a

24     trial.  Ms. Cavale is going to give each of you a notepad and

25     pen for tomorrow.  Please write your name on the cover.  You

I5n6gal2

don't have to take notes.  If you do take notes, please only do

so in these pads.  Don't remove the notepads from the courtroom

or the jury room.  Just leave them in the jury room or on your

seat or give them to Ms. Cavale.

        The notes are only for your use and they are only as

an aid to your memory.  Your memory will ultimately control.

Also, if you do take notes, just be careful that you are

getting so involved with taking notes that you are not watching

the witnesses and listening to the testimony.  Once you are in

your deliberations if there is a disagreement between one

juror's notes and another juror's notes or one juror's notes

and another's jurors recollection you can ask to the court

reporter to read back the testimony or we can send back the

testimony.  It is the official court transcript that controls

and not any particular juror's notes.

        During the course of trial, exhibits will be received

into evidence and they will be marked by exhibit number.  If

there is an exhibit you are particularly interested in seeing,

feel free to write down that exhibit number and ask to see it

again later.  I will tell you at the end of the trial, I will

give you a list of all the witnesses and all of the exhibits so

don't feel like you have to feel pressured to keep track.

        I said we normally begin trial at 10:00 a.m.  I was

going to ask you to come in a little early tomorrow at 9:15.  I

usually have jurors come in 9:30.  I have breakfast for you

I5n6gal2

waiting as an enticement and we start at 10:00.  I was going to

ask you to come at 9:15 and start at 9:30.  If that is a

problem for anybody, tell Ms. Cavale.  I will expect you to be

here at 9:15 and we'll start with opening statements at 9:30.

I generally continue until 5:00 p.m. each day.  There

are a couple days where I will tell you in advance we'll start

late or leave early.  We normally take an hour or approximately

an hour for lunch and we take a short break in the morning and

a short break in the afternoon and then we try to do as much

work as we can.  Just keep in mind we cannot start until all of

you are here.  If any of you are late, it just means everyone

has to wait including the lawyers, court reporter, myself, the

witnesses.  I just want to make sure that you appreciate the

importance of coming on time.

Lastly, I am going to tell you a little bit about how

the trial will proceed.  As I said tomorrow morning we'll have

opening statements.  The government's attorney will make an

opening statement and then defense's attorneys will make

opening statements.  Again, because it is the government's

burden of proof, the defendants don't have to do anything

unless they choose to.

The opening statements are neither evidence nor

argument.  They are simply outlines of what the attorneys

believe the evidence will show and they are given to help you

follow the evidence as it is presented.  After the opening

I5n6gal2

statements, the government will present its case.  The
government will call its witnesses and after each witness
testifies on direct examination, counsel for the defendants
will have the opportunity if they want to to cross-examine
those witnesses and at times there is a little bit of what we
call redirect and recross.

       Following the government's case, it will rest.  The
defendants may then if and only if they choose to present
defense cases and counsel for the government will have the
opportunity to cross-examine those witnesses if there are any.
As I said, it is important to remember in a criminal case a
person who is charged with a crime has no burden to prove that
he is not guilty.  If any of the defendants choose not to
present any proof, that decision cannot be held against them in
any way.

       I will instruct you again on the burden after all the
evidence is in.  After the presentation of evidence is
completed and both sides have rested, then the attorneys will
deliver what is called closing arguments, and they will
summarize and interpret the evidence for you.  Just like with
the opening statements, these are not evidence.  These are
instead arguments.  Following closing arguments, I will
instruct you on the law.  You will then finally retire to
deliberate on your verdict, which must be unanimous and must be
based on the evidence presented in this courtroom.

I5n6gal2

1          You have a tremendously important task as jurors.  It

2     is to determine the facts.  You and you alone and not the Court

3     and not anyone else, you are the sole judges of the facts.  The

4     Constitution itself recognizes your unique role in our criminal

5     justice system.  So please just pay careful attention to the

6     witness and the evidence received and follow my instructions on

7     the law.

8          With that we're going to swear you in as jurors and we

9     are going to say good night.

10          THE DEPUTY CLERK:  Jurors please rise and raise your

11     right hand.

12          (A jury of 12 and 4 alternates was impanelled and

13     sworn)

14          THE COURT:  Ms. Cavale is going to walk you out.  She

15     is going to give you passes to help you get in in the morning.

16     Again, unless I hear from anyone, I expect you will be here at

17     9:15 and we'll start promptly at 9:30.

18          Thank you again.  Have a nice evening.

19          (Jury excused)

20          (Continued on next page)

21

22

23

24

25

I5n6gal2

1              (In open court; jury not present)

2              THE COURT:  So why don't we all plan to be here at

3      9:15, too, and we'll have openings at 9:30.  I will rule on a

4      number of pending motions and I will rule on them as we go

5      along during the breaks and alike.

6              MR. SCHWARTZ:  Was someone keeping track?  Did any of

7      the seated jurors have scheduling problems on later days?

8              THE COURT:  I am going to look at my notes tonight.  I

9      will go over it with you.  I am happy to look right now.  I

10     will look tonight.  Why don't you look tonight and if there is

11     anything, we'll build it in.  I am trying to remember who had

12     doctor appointments that were on Mondays.  That is a kind of

13     thing we'll have to tell them in advance.  I will have to look

14     back in my notes unless anyone's memory is better than mine.

15             MS. TEKEEI:  We provided to defense counsel with a

16     list of the exhibit that we intend to be introduced through Mr.

17     Anderson, who will be our first witness.  It would be

18     tremendously helpful if we received defense counsel's

19     objections so we can streamline the discussion about those

20     tomorrow.

21             THE COURT:  If you can do that that will be helpful.

22     Again, what I really don't want to do is keep the jury waiting

23     while looking at an exhibit for the first time and figuring out

24     and listening to your objections on it.  Whatever you can do to

25     prevent the jury from waiting.  I will meet you after court

I5n6gal2

1   every day and talk about any issue you want to if I don't have

2   something else scheduled.  I will meet you during breaks and

3   lunch.  I don't like to keep the jury waiting.  I understand

4   defendant's concerns about not wanting to highlight all the

5   issues you are going to raise; but if you can give me some

6   advanced notice so I can formulate my opinion, that will be

7   helpful.

8          MR. TOUGER:  My question is why as far as the Burnham

9   manuals, why we had to put in three different copies?

10         MS. TEKEEI:  We are happy to discuss the documents

11  individually.  I just wanted to flag for the Court we had

12  provided them and we'll engage in discourse with them this

13  evening.

14         MS. MERMELSTEIN:  Your Honor, one other issue.  There

15  have been what I assume are a number of family members who are

16  friends of the defendants in the courtroom.  That's obviously

17  fine.  There are also such people on the witness list that have

18  been provided to the government.  The government doesn't have

19  to decide who they want to call; but if there is a possibility

20  someone is going to be a witness, then they shouldn't be in the

21  courtroom during the trial.

22         THE COURT:  Are any of those witnesses going to

23  testify about any of the facts that anyone else is going to

24  testify about, or you just don't know?

25         MS. MERMELSTEIN:  I don't know.

I5n6gal2

1          MR. SCHWARTZ:  So the answer is I guess it depends

2    what you mean by any of the facts.  For example, I expect that

3    Mr. Archer's wife will testify and will testify to where he was

4    physically at various times during the relevant time period.

5    To state the obvious I think it would be a significant problem

6    if the government asked to bar the defendant's wife from these

7    proceedings.

8          THE COURT:  That's what I am trying to get at.  I

9    understand the concern about potentially tainting a witness's

10   testimony by hearing the testimony of others; but if it is

11   really not a genuine issue because the testimony will be about

12   facts that are unrelated for the most part, I think it would be

13   a nice thing to have his family here or let them have their

14   families.

15         MS. MERMELSTEIN:  Your Honor, of course we don't know

16   what any of these witnesses are going to say.  We haven't --

17   not for any -- it is not a nefarious issue, but we haven't

18   received any notice of what any defense witness is going to

19   say.  There hasn't been any 26.2 disclosure.  The question for

20   us is is it the nature of.  If it is going to be character

21   testimony, then that's fine.  It is not affected by the trial

22   testimony.  What Mr. Schwartz has said is less clear to me

23   generically that Mr. Archer is very busy or that he was in a

24   particular place at a key moment in time that is going to be

25   talked about and we're not in a good place to evaluate that so

I5n6gal2

1    we want to raise the issue with the Court.

2              THE COURT:  Both sides are entitled to have witnesses

3    sequestered from the courtroom if they're going to testify.  I

4    will suggest that you tell the government as much as you can to

5    assure them that this isn't going to taint those witnesses in

6    any way so they can stay.

7              MR. SCHWARTZ:  We're happy to have that conversation.

8    I think it is somewhere in between the poles of what Ms.

9    Mermelstein is talking about.  It is not just that he was busy

10   but not an alibi, for lack of a better word.  We can take it

11   off line.

12             We can also take off line the issue of exhibit

13   disclosures and certainly I am happy to give the government

14   lists of whatever I may object to.  I think we all share an

15   interest in evidence that is unobjected to coming in quickly

16   and the stuff that is subject to objection getting thoughtful

17   rulings from your Honor.

18             Having thought a little bit about what the Court said

19   this morning, and we'll talk about this, but I think I am

20   prepared to say -- I haven't spoken to my colleague who tried

21   to that digital case -- that if we can reach a similar

22   agreement, which is in the government produces its -- not

23   produces -- identifies his exhibits several days in advance and

24   we identify our exhibits a day in advance with the

25   understanding that they will not work those exhibits into their

I5n6gal2

1    direct, I will be happy to do.

2              THE COURT:  If they were not otherwise going to.  If

3    they don't change their direct examination based on that

4    disclosure.  That is a fair request.

5              MS. MERMELSTEIN:  Let us discuss that, your Honor.

6              THE COURT:  Discuss that.  That would be very helpful

7    for me because when we meet at the end the day or 9:30 in the

8    morning or earlier if there will be a lot of issues, we can

9    decide things as quickly as possible and move the trial along.

10             MR. SCHWARTZ:  The other things in terms of things on

11   your Honor's plate, I think there is agreement except for one

12   sort of silly thing about the stipulation with respect to the

13   Jason Galanis, Gary Hirst, Michelle Morton pleas.

14             THE COURT:  Oh, is that right?

15             MR. SCHWARTZ:  I am characterizing it as a silly

16   thing, but I care about it.  They want to call it a government

17   exhibit.  It is a defense exhibit.  We are impeaching their

18   witnesses.  This is exactly the presumption.

19             THE COURT:  Can we make it a joint exhibit?  Can we

20   give it both the government and defense letters, numbers?

21             MR. SCHWARTZ:  I don't want them putting it in on

22   their case.  When the government puts in a stip, no matter what

23   instruction you give saying three people have been convicted in

24   this case before, it means something very different to the jury

25   than when we put that in this our case.

I5n6gal2

1          MS. MERMELSTEIN:  Your Honor, I don't think it is an

2    issue of the government.  The 806 fights that we have had have

3    all been about the notion that out of fairness to the defense,

4    they have to be permitted to do that which they would have done

5    had these witnesses actually testified.  And there is no

6    question that if these witnesses took the stand in the

7    government's case, the government would be entitled to elicit

8    on direct examination these facts as it will do with its for

9    example this cooperating witness.

10          So the notion that the defense should be able to offer

11    it only in their case and suggest the government has somehow

12    hidden that from the jury when the government would have

13    elicited from its witnesses were they here is not in the spirit

14    of attempting to treat the impeachment material as though the

15    witness was on the stand.  I think therefore the government has

16    to be able to offer it in its case-in-chief.  We have no

17    objection to it being a joint exhibit in an effort so the

18    defense doesn't feel it is just a government exhibit, but we

19    will not stipulate to something that is simply a defense

20    exhibit and permit them to suggest to the jury incorrectly that

21    the government has hidden something from the jury.

22          THE COURT:  I have to tell you I think making it a

23    joint exhibit, having it have a -- are you numbers or you are

24    letters?  Is that what we're doing?

25          MS. MERMELSTEIN:  Different numbers.

I5n6gal2

```
 1            THE COURT:  You are both numbers?

 2            MR. SCHWARTZ:  We're both numbers.

 3            THE COURT:  In any event just having a Government

 4    Exhibit --

 5            MS. MERMELSTEIN:  That's fine.

 6            THE COURT:  -- 100 or whatever and Defense Exhibit

 7    such-and-such, and that way you are both sending the message to

 8    the jury that you think that this is something that helps you.

 9    That is my suggestion, but I cannot tell you what to stipulate

10    to and I am not going to.

11            MR. SCHWARTZ:  That is fine by me as long as I can

12    read it.

13            MS. MERMELSTEIN:  That's exactly the point, your

14    Honor.  The government is putting on the case.  This is the

15    impeachment of the government's purported witnesses because

16    they are none testifying declarants.  If they were on the

17    stand, the government would elicit on direct examination and

18    the defendant would ask what they were going to ask.  The

19    government has to be permitted to put this in when it is

20    putting in the evidence in the case of chief.

21            The alternative is to suggest that the government

22    didn't want to tell the jury this and the defense wanted to and

23    that is incorrect.  It does not put everyone in the position

24    they would have been in if these witnesses did not take the

25    stand and Mr. Schwartz has characterized it as a silly dispute,
```

I5n6gal2

1    but it isn't

2              THE COURT:  Would it help if I said something to the

3    jury that it is a stipulation and it comes from both sides, the

4    government is going first and it is reading it, but it should

5    be considered a defense exhibit just like a government exhibit?

6              MR. SCHWARTZ:  I would have no problem if whenever in

7    the government's case they wanted to do it, your Honor, your

8    Honor's staff read the stipulation and said it was being read

9    at the defense's request, but it was a joint stipulation.

10             THE COURT:  Do you have a problem with that?

11             MR. SCHWARTZ:  This is not an issue for tomorrow.

12             MS. MERMELSTEIN:  The government has no objection to

13   your Honor reading the stipulation or Ms. Cavale reading the

14   stipulation as a way to absent it from the parties.  I think

15   what Mr. Schwartz said at the end with an instruction from the

16   Court that the defense requested it.  I think it is --

17             THE COURT:  I will say you both requested it.

18             MS. MERMELSTEIN:  That's fine.

19             THE COURT:  We'll make it even.  I am happy to read

20   whatever you want me to read.

21             MS. MERMELSTEIN:  That's not a problem.

22             THE COURT:  See you all at 9:15.

23             (Adjourned to May 24, 2018 at 9:15 a.m.)

24

25