

MATTHEW L. SCHWARTZ
Tel.: (212) 303-3646
E-mail: mlschwartz@bsfllp.com

March 7, 2022

**BY ECF**

Hon. Ronnie Abrams
United States District Judge
United States District Court
Southern District of New York
40 Foley Square
New York, New York 10007

   Re: *United States v. Galanis*, S3 16 Cr. 371 (RA)

Dear Judge Abrams:

  We represent Devon Archer and write in further response to the application Mr. Archer made at sentencing for a stay of the imposition of his sentence pending appeal. The Court requested a letter within one week setting forth the basis of the appeal and any authority for issuing such a stay. [*See* 02/28/22 Archer Sentencing Tr. at 50:4-5.] For the following reasons, Mr. Archer respectfully requests that the Court stay the imposition of his sentence and the Government's proposed forfeiture order.[1]

  As the Court's judgment was only entered this afternoon, Mr. Archer will file his notice of appeal shortly. Mr. Archer anticipates raising several grounds for appeal, including:

  1. The jury charge, in particular the Court's decision not to give a multiple conspiracies charge and its decision to give a conscious avoidance charge. [*See* Trial Tr. 3590-91.] This argument will be reviewed *de novo* by the Second Circuit, and we respectfully submit will warrant reversal. The evidence at trial was at least "susceptible to the inference that there was more than one conspiracy" – a conspiracy to defraud the clients of the investment advisors Atlantic and Hughes, and a conspiracy to steal the bond proceeds – which should have made "the question of whether one or more than one conspiracy has been established . . . a question of fact for a properly instructed jury." *United States v. Maldonado-Rivera*, 922 F.2d 934, 962 (2d Cir. 1990). Likewise, the evidence at trial did not support an argument that Mr. Archer took any step to avoid learning or "decided not to learn [a] key fact.'" *United States v. Ferrarini*, 219 F.3d 145, 157 (2d Cir. 1994). *See* ECF No. 531 at 1-4 (Mr. Archer's letter opposition to the Government's request for a conscious avoidance charge); *see also Ferrarini*, 219 F.3d at 154-55 (defendant cannot consciously avoid joining a conspiracy).

  2. The denial of Mr. Archer's motion to sever the trial with co-defendant John Galanis. [*See* 05/16/18 Hr'g Tr. at 95.] When denying Mr. Archer's motion for

---

[1] Nothing in this submission should be understood as an acknowledgment that Mr. Archer is in fact guilty.



> severance, the Court noted that evidence of John Galanis's separate involvement in the so-called Gerova fraud would not be coming in at trial. [*See* 05/16/18 Hr'g Tr. at 7-9, 98.] The Gerova evidence did come in at trial after John Galanis opened the door during closing argument. The government was allowed to present this evidence, and to supplement its closing argument, immediately before Mr. Archer's closing statement and with no evidentiary opportunity for Mr. Archer to respond. The Court's limiting instruction was insufficient to overcome the substantial prejudice of this evidence, which was amplified by the timing and mode of its presentation.

3. The denial of Mr. Archer's motion to suppress the fruits of impermissibly broad warrants. [*See* 05/14/18 Hr'g Tr. at 13:7-28:5.] The Government seized the entirety of certain electronic accounts owned by Mr. Archer and his then-assistant. Mr. Archer challenged the searches on multiple grounds, including that the warrants were constitutionally infirm on their face, lacked the necessary probable cause, and intruded on Mr. Archer's attorney-client privilege. [*See* ECF Nos. 302 (opening brief), 314 at 33-78 (reply brief).] The Court noted, for example, that the question of whether the warrants were overbroad in that "they authorized the search for records" "other than email service" was "a difficult one." [05/14/18 Hr'g Tr. at 120:7-15.]

4. The sufficiency of the evidence. We recognize that the Second Circuit addressed this issue in its interlocutory decision, but the law has changed again since then, as we discussed in Mr. Archer's sentencing submission. *See United States v. Landesman*, 17 F.4th 298, 331 (2d Cir. 2021). In any event, the government opposed certiorari on this issue largely because of the interlocutory nature of the appeal, so Mr. Archer will raise the issue before the Second Circuit to preserve further Supreme Court review.

5. The sentencing. As discussed in detail below, the Court erred when it assumed at sentencing that the Court must defer to perceived factual findings "implicit" in the jury's verdict that went well beyond the elements of the crime.

## **Argument**

Any one of the above issues is sufficient standing alone to warrant a stay of the sentence, but we focus here on the appeal of the sentence specifically. Section 3143 of Title 18 of the United States Code expressly instructs a Court to stay the imposition of a sentence of imprisonment pending appeal provided the Court finds:

> (A) by clear and convincing evidence that the person is not likely to flee or pose a danger to the safety of any other person or the community if released under section 3142(b) or (c) of this title; and
>
> (B) that the appeal is not for the purpose of delay and raises a substantial question of law or fact likely to result in—
>
> > (i) reversal,



>    (ii) an order for a new trial,
>
>    (iii) a sentence that does not include a term of imprisonment, or
>
>    (iv) a reduced sentence to a term of imprisonment less than the total of the time already served plus the expected duration of the appeal process.

18 U.S.C. § 3143(b)(1).[2] The Second Circuit has further broken the second clause of subsection (B) down into discrete questions. The Court must first determine whether "the appeal raises a substantial question of law or fact," and, if so, then determine "if that substantial question is determined favorably to defendant on appeal, that decision is likely to result in" one of the outcomes listed under § 3143(b)(B)(i)-(iv). *United States v. Randell*, 761 F.2d 122, 125 (2d Cir. 1985) (citing 18 U.S.C. § 3143(b)).

Though it is the defendant's burden of persuasion to obtain a stay, courts routinely grant such stays based on a proper showing, particularly where (as here) the length of the sentence imposed is almost sure to pass before any appeal is decided. *See, e.g.*, *United States v. Smilowitz*, No. S1 16 CR 818 (VB), 2019 WL 1493578, at *2 (S.D.N.Y. Apr. 4, 2019) (granting bail pending appeal and citing *Randell*, notwithstanding that "Court stands by this ruling, and is confident the Circuit . . . will agree"); *United States v. Zodhiates*, No. 14-CR-175-RJA, 2017 WL 1100616, at *3 (W.D.N.Y. Mar. 24, 2017) (staying sentence based on differing interpretations of a statute); *United States v. Silver*, 203 F. Supp. 3d 370 (S.D.N.Y. 2016) (granting a stay of sentence, fine, and forfeiture where a jury charge as a whole may have complied with, but did not use the exact words from, Supreme Court precedent); *United States v. Koschuk*, No. 09–CR–323S, 2010 WL 5072073, at *1 (W.D.N.Y. Dec. 3, 2010) (granting stay and finding that, though, "the evidence presented at trial was sufficient to sustain Defendant's conviction and establish that he knowingly [committed the crime], this Court recognizes the possibility that reasonable minds could differ in that assessment").

**A.     Mr. Archer Is Not a Flight Risk and Is Not Appealing for the Purpose of Delay**

Each factor favors a stay of the imposition of the sentence pending appeal. Mr. Archer has consistently demonstrated – and the Court has repeatedly determined, both before and after his conviction – that Mr. Archer is not a flight risk nor a danger to his community. [*See, e.g.*, 02/28/22 Archer Sentencing Tr. at 41:13-15, 43:19-21 (finding that Mr. Archer "does not present a danger to the community and is unlikely to recidivate" and imposing supervised release "for one year instead of three because [he has] been on release for six years already").]

There is also no basis on which the Court could find that Mr. Archer is appealing for the purpose of delay – he has steadfastly maintained his innocence, appeared at every conference, participated directly in his own defense, and intends to litigate important issues before the

---

[2]     This provision does not apply in so-called "presumption" cases involving, for example, crimes of violence or certain drug offenses, 18 U.S.C. § 3143(b)(2), but that is not an issue here.



Second Circuit and, if necessary, before the Supreme Court. This Court has already adjourned sentencing once before when Mr. Archer filed a petition to the United States Supreme Court for a writ of certiorari. [*See* ECF No. 956.][3]

**B.     Whether the Court Erred at Sentencing Is at Least a "Close Question"**

The appeal will raise multiple substantial questions of law and fact. A "substantial question" is one that "is one of more substance than would be necessary to a finding that it was not frivolous. It is a 'close' question or one that very well could be decided the other way." *Randell*, 761 F.2d at 125 (cleaned up).  Each of the grounds for appeal raised by Mr. Archer above is a "substantial" one.  For example, the Court expressly recognized that at least one of the suppression arguments raised by Mr. Archer was "a difficult one," [05/14/18 Hr'g Tr. at 120:7-15], which itself satisfies this standard.

Because the sentencing issues were most recently before the Court, we expand on them at some length here.  In addition to considering them for purposes of staying imposition of Mr. Archer's sentence, we respectfully submit that the Court may have committed the sort of "clear error" – including because of the government's express concessions – that would justify amending Mr. Archer's sentence under Rule 35.[4]

The Court erred at sentencing when it adopted factual findings that it believed were "implicit in the jury's verdict," but which went far beyond the elements of the charged crime. [*See* 02/28/22 Archer Sentencing Tr. at 20:15-20, 24:5-16, 25:20-25.] On this basis, the Court at sentencing believed that it had no discretion, consistent with Your Honor's oath, to engage in independent fact-finding with respect to the scope of Mr. Archer's knowledge of the conspiracy. The Court also believed, as a consequence, that it lacked discretion to calculate the Sentencing Guidelines other than with respect to the full sweep of Jason Galanis's conspiracy, which resulted in (among other things) a substantial loss amount and a 22-level enhancement under the guidelines. *Id.* at 25:20-25; *see also id.* at 24:5-16 (The Court: "given that the jury found him guilty of these charged crimes, as alleged in the indictment, I have to accept that he had the requisite intent to commit those crimes, and in doing so, I believe I must also accept that he knew that the investment advisor clients were being defrauded and that the tribal bond proceeds were being misappropriated.").

The law in the Second Circuit, the jury charge, and the government's arguments to the jury all demonstrate that this assumption by the Court was misplaced. At the very least, there is a "substantial question" on appeal.

---

[3]     The Court determined that Mr. Archer demonstrated "good cause" under Federal Rule of Criminal Procedure 32(b)(2) to adjourn his sentence when he filed his petition with the Supreme Court concerning the Second Circuit decision "clarifying" Rule 33. [*See* ECF No. 956.]

[4]     Under Rule 35(a), any correction would need to be done within 14 days of sentencing, not entry of judgment – so, no later than March 14, 2022. *See* Fed. R. Crim. P. 35(a).



### 1. A Sentencing Court Is Only Bound By A Jury's Finding With Respect To The Elements Of The Counts Of Conviction

Other than with respect to the elements of the crime, the jury's verdict does *not* have a binding effect on a sentencing court's discretion to find facts by a preponderance of the evidence:

> It is important to note that the scope of conduct for which a defendant can be held accountable under the sentencing guidelines is significantly narrower than the conduct embraced by the law of conspiracy. [T]o obtain a conviction for conspiracy, the government must demonstrate that the accused had some knowledge of the unlawful aims of the conspiracy, *but it is not necessary to demonstrate that the accused knew all of the unlawful aims of the scheme charged.*

*United States v. Perrone*, 936 F.2d 1403, 1416 (2d Cir.) (emphasis added), *decision clarified on reh'g*, 949 F.2d 36 (2d Cir. 1991). The government agreed when it stated at sentencing that, "following the jury verdict, the Court can fact-find and is limited only by the nature of the elements." [02/28/22 Archer Sentencing Tr. at 15:11-13.] This admission is directly at odds with the approach the Court took at sentencing, and concedes the existence of a substantial question on appeal.

The single case the Court relied on at sentencing, *United States v. Hourihan*, 66 F.3d 458 (2d Cir, 1995), does not suggest that a sentencing Court is bound by a jury's findings beyond the elements of the crime. In *Hourihan*, the defendant was convicted of aggravated sexual abuse, which the Second Circuit explained meant that "the jury necessarily found, beyond a reasonable doubt, that the defendant had attempted to commit a sexual act by force" – a question relevant to whether the district court applied the right guideline. But this was nothing more than a restatement of the elements of aggravated sexual assault. *See, e.g., United States v. Crowley*, 318 F.3d 401, 415 (2d Cir. 2003) ("The court succinctly and correctly defined the elements of aggravated sexual abuse, correctly noting that the offense includes both knowingly causing a person to engage in a sexual act (which the court later correctly defined for the jury) by force, and attempting to do so.").

The quotation from *Hourihan* upon which the Court relied originated in a First Circuit case called *United States v. Weston*, 960 F.2d 212 (1st Cir. 1992), *abrogated by Stinson v. United States*, 508 U.S. 36 (1993). That case also did not imply that a sentencing court is bound by anything other than the elements necessarily found by the jury. The issue in *Weston* was whether the district court correctly deferred to the jury's finding of retaliatory intent when it applied a guidelines enhancement, *id.* at 218, but the defendant in that case was literally convicted of the crime of "retaliating against a witness, victim, or an informant" under 18 U.S.C. § 1513 – a crime for which "intent to retaliate" is part of the statutory language.

There is no authority of which we are aware that requires a sentencing court to guess what facts a jury might have found, and defer to those hypothetical findings. Such a rule would largely write a court's fact-finding role out of sentencing, since the government routinely obtains



extensive indictments that describe the alleged conduct in great detail. *See United States v. Negron*, 967 F.2d 68, 72 (2d Cir. 1992) ("'Because a count may be broadly worded and include the conduct of many participants over a substantial period of time, the scope of the jointly-undertaken criminal activity, and hence relevant conduct, is not necessarily the same for every participant.'" (quoting Guidelines § 1B1.3 Application Note) (remanding for findings concerning scope of defendant's knowledge of drug conspiracy)); *see also United States v. Martinez-Rios*, 143 F.3d 662, 678 (2d Cir. 1998) (applying *Negron* in a tax evasion conspiracy case for tax loss purposes).

As the Third Circuit has explained, where there is any doubt about whether the jury necessarily made a finding, a sentencing court should engage in its own fact-finding and not defer to the verdict. Put differently, a sentencing court should only defer to a jury's fact-finding if there is "no question but that the relevant finding was ***necessarily*** made by the jury." *United States v. Fiorelli*, 133 F.3d 218, 225 (3d Cir.1998). "However, when a jury renders a general verdict, establishing that the verdict necessarily determined any particular fact can be very difficult." *United States v. Atl. States Cast Iron Pipe Co.*, 627 F. Supp. 2d 180, 278 (D.N.J. 2009).

As a result, courts uniformly take the position that a sentencing court is bound only by a jury's findings as to the *elements* of the charged offense or facts that are strictly logically ***necessarily*** entailed by a finding of guilty. Every other sentencing fact is for a court to determine by a preponderance of the evidence. *See, e.g.*, *United States v. Gray*, 942 F.3d 627, 633 (3d Cir. 2019) (citing language quoted in *Hourihan* and explaining "the District Court correctly found that the elements of falsity and materiality were implicit in the jury's guilty verdict for possession of a firearm. Obviously, the jury could not have convicted Gray of possession of a firearm without finding that he had *in fact* possessed a firearm. Further, if the jury had believed Gray's testimony that he did not possess a firearm, the jury would not have convicted him of unlawful possession of a firearm. As such, there can be no question that the relevant findings with respect to the falsity and materiality of Gray's testimony were necessarily made by the jury."); *United States v. Jackson*, 862 F.3d 365, 395 (3d Cir. 2017) (citing language quoted in *Hourihan* and holding that "The government admittedly does read too much into the jury's verdict" and looking only to the elements of the charged offenses); *United States v. Moskovits*, 86 F.3d 1303, 1313 (3d Cir. 1996) (Stapleton, *J.*, concurring) (citing language quoted in *Hourihan* and explaining "if a defendant has testified that he was elsewhere at the time of a robbery, and the jury finds him guilty of that robbery, the jury's verdict provides a sufficient basis for a finding by the court that the defendant's testimony was false."); *United States v. Rostoff,* 53 F.3d 398, 413 (1st Cir. 1995) (citing language quoted in *Hourihan* and holding that because five different defendants were convicted of participating in the same conspiracy, the court was bound to conclude for sentencing purposes that the conspiracy involved at least five members (a fact relevant to a role enhancement)); *United States v. Diambrosio*, No. CRIM. A. 04-66, 2008 WL 732031, at *2 (E.D. Pa. Mar. 13, 2008) (citing language quoted in *Hourihan* and observing "Defendant testified that the stock trades in question had been authorized by Dan Bigelow, president of Binary, and that therefore he had not defrauded the company. Because the jury concluded that Defendant intentionally defrauded Binary, and ***because intent is a necessary element of the offense of which he was convicted***, Defendant's testimony that the stock trades were authorized cannot be reconciled with the jury verdict." (emphasis added)); *United States v. Arnone*, 973 F. Supp. 206, 207 (D. Mass. 1997) (citing language quoted in *Hourihan* and holding



"Since Arnone and Middleton were both convicted after a jury trial, I cannot revisit the jury's determination **with respect to the elements of the offenses of conviction**." (emphasis added)); *United States v. Boggi*, 74 F.3d 470, 478 (3d Cir. 1996) (citing language quoted in *Hourihan* and reasoning "In convicting Boggi, the jury necessarily rejected his testimony that he was innocent of the extortion offenses charged.").

As the above-quoted authorities demonstrate – and as the government agrees – a sentencing court is bound only by the jury's determination on the elements of the charged crimes. The casebooks are filled with decisions in which judges assess critical aspects of a defendant's conduct or knowledge in ways that may be in some tension with, but are not *necessarily* foreclosed by, a jury's verdict. *See, e.g., United States v. Manzano-Excelente*, 934 F. Supp. 617, 621-22 (S.D.N.Y. 1996) (granting safety valve relief to defendant who denied knowing participation in conspiracy and rejecting government's argument that under *Hourihan* and *Weston*, defendant's conviction of conspiracy to distribute 80 kilograms of cocaine was outcome-determinative).

Because the jury did not *necessarily* find that Mr. Archer knew the full sweep of Jason Galanis's conspiracy – as the government argued expressly to the jury – the Court erred in finding that it was unable to engage in independent fact-finding concerning Mr. Archer's knowing involvement.

## 2. *The Jury Did Not Necessarily Find That Mr. Archer Knew The Full Sweep Of Jason Galanis's Scheme*

The elements of the crimes charged in Counts One or Two of the Indictment did not require that the jury find beyond a reasonable doubt that Mr. Archer knew of every part of the alleged scheme. To be sure, the Indictment characterized that scheme in the broadest sense, to encompass all three bond issuances from beginning to end, including the theft of investor funds and the misappropriation of the bond proceeds. But the Court's instructions and the government's arguments to the jury did not require that the elements of the crimes included Mr. Archer's knowledge of the full scheme. The Court instructed that the jury must find "find that the government has proven the specific charges in the indictment, not some other crime, beyond a reasonable doubt," Trial Tr. at 4142, and further instructed that the specific charges of securities fraud and conspiracy to commit securities fraud:

> **relate** to an alleged scheme by each of the defendants to defraud [the WLCC] to issue bonds, which I will call the Wakpamni bonds, based upon false and misleading representations and to fraudulently cause clients of Atlantic and Hughes to buy certain of those bonds, thereby defrauding those clients as well. The indictment also alleges that the defendants failed to invest the bond proceeds on the WLCC's behalf in the manner agreed upon and instead misappropriated the bond proceeds for their own use.

[Trial Tr 4143:19-4144:7 (Charge) (emphasis added).] In other words, the Court instructed the jury to determine whether Mr. Archer committed securities fraud and conspiracy to commit securities fraud, and whether those crimes *related* to the alleged scheme in the indictment and



not some other scheme. The jury was *not* instructed to find beyond a reasonable doubt that Mr. Archer knew of the entire scheme.

At sentencing, the Court cited the above pages of the trial transcript – pages 4143 to 4144 – to suggest that the Court must "accept the facts that are implicit in a finding of guilt" and must therefore "accept that [Mr. Archer] knew that the investment advisor clients were being defrauded and that the tribal bond proceeds were being misappropriated." [02/28/22 Archer Sentencing Tr. at 7:25-8:23.]

This was an error. In order to attribute any particular conduct or knowledge to the defendant at sentencing, the Court must find "1) that the acts were within the scope of the defendant's agreement and 2) that they were foreseeable to the defendant." *United States v. Studley*, 47 F.3d 569, 574 (2d Cir. 1995); *see also United States v. Johnson*, 378 F.3d 230, 238 (2d Cir. 2004) (applying the *Studley* test as part of a conspiracy charge). The Court should not have assumed Mr. Archer's knowledge of the entire scheme based on the verdict, because (as we discuss further below) the jury was not *required* to find that Mr. Archer knew about the entire scheme in order to convict.

### a. The Substantive Securities Fraud Count

As charged to the jury, the elements of Counts One and Two did not depend on broader knowledge of the scheme. For Count Two, substantive securities fraud, the Court instructed the jury that:

> the government must prove each of the following elements beyond a reasonable doubt: First, in connection with the purchase or sale of securities such as bonds, the defendant you are considering did any one or more of the following: One. Employed a device, scheme or artifice to defraud; or Two. Made an untrue statement of a material fact or omitted to state a material fact which made what was said under the circumstances misleading; or Three. Engage in act, practice or course of business that operated or would operate as a fraud or deceit upon a purchase or seller; Second, that the defendant you are considering acted knowingly, willfully and with the intent to defraud; . . .

[Trial Tr. 4147:25-4148:15 (Charge).] The Court then elaborated on each element. The government was required to prove that the defendant committed "at least one" of three types of unlawful conduct, such as an "artifice to defraud," "an untrue statement" or omission of material fact, or an act that "would operate as a fraud or deceit upon a purchaser or seller." *Id.* at 4149:3-15. The Court continued, stating that a "statement may also be false if it contains half-truths or it conceals material facts in a manner that makes what is said or represented deliberately misleading." *Id.* at 4150:12-14. The jury was also required to find that there "was some nexus or relation between the allegedly fraudulent conduct and the sale or purchase of securities." *Id.* at 4151:2-8 (noting it is enough if "the alleged fraudulent conduct touched upon a securities transaction"). The Court also gave an aiding and abetting charge, stating that the jury could convict Mr. Archer of substantive securities fraud if "he willfully, knowingly associated himself


in some way with the crime and that he willfully and knowingly would seek by some act to help make the crime succeed." *Id.* at 4159:15-19.

Nowhere in the charge for Count Two was the jury required to find beyond a reasonable doubt that Mr. Archer was aware of the full scope of Jason Galanis's scheme apart from at least one securities transaction. To the contrary, the jury charge expressly acknowledged that there were multiple independent ways that a defendant could be guilty of securities fraud. The government argued this explicitly to the jury: "I alert you to that portion of the charge, that there are multiple ways to be found guilty of Count Two." [Trial Tr. 4098:12-14 (government rebuttal).]

In fact, the government argued explicitly that Mr. Archer could be found guilty on the basis of *one email* alone concerning Mr. Archer's statement to Morgan Stanley in connection with the purchase of the bonds from the second offering. The only participants in the email were Mr. Archer and the Morgan Stanley employee. As the government described it:

> Let's start with Government Exhibit 344. Remember Archer was trying to deposit the $15 million of Wakpamni bonds at Morgan Stanley, and in order to do that he had to provide certain information about the bonds, and so Catharine Driever, an associate at Morgan Stanley, asks him how is was 15 million generated that was used to purchase the bonds? And he says $15 million was generated through sale of real estate. That's a lie. The money is not from the sale of real estate; it's from Jason Galanis; it's from the first bond proceeds; and it is a lie that's being told directly by Devon Archer. . . . Now, ladies and gentlemen, this e-mail alone is enough to show you that Archer was a knowing participant in this scheme, **and it's enough to convict him**.

[Trial Tr. 3656:6-25 (government summation).] In other words, the government argued expressly that this single piece of evidence was sufficient to meet all of the elements of securities fraud because it was an untrue statement of material fact and/or a scheme or artifice to defraud ("generated through the sale of real estate") in connection with the purchase of securities (the "$15 million of Wakpamni bonds") made with intend to defraud. But if they jury had taken the government up on its invitation to convict Mr. Archer on this one e-mail alone, it would not say anything about (1) whether Mr. Archer knew that any investment advisory clients had been defrauded; (2) whether Mr. Archer knew that there were two other issuances of bonds as part of the scheme; or (3) whether Mr. Archer knew that the bond proceeds were being misappropriated. This is one of many ways – as the government argued – that the jury could have convicted Mr. Archer without embracing the full sweep of Galanis's scheme.

Yet at sentencing, the Court expressed doubt that it could adopt its earlier findings on the Rule 33 motion and still credit the jury's verdict. But the Court clearly can. The Court was troubled by Mr. Archer's statements to Morgan Stanley but nonetheless found that the evidence did not show that "he was misleading because he knew Galanis was stealing the bond proceeds." *United States v. Galanis*, 366 F. Supp. 3d 477, 500 (S.D.N.Y. 2018). On this theory, the jury could have convicted Mr. Archer for misleading Morgan Stanley as to the true source of the


funds – "it's from Jason Galanis," in the government's words – which could, in the jury's view, have constituted a scheme or artifice to defraud in connection with the purchase or sale of a security. And the underlying securities, the bonds, are related to the scheme alleged in the Indictment.

There would be, in other words, nothing inconsistent with the Court finding by a preponderance of the evidence that Mr. Archer did not know that Galanis was stealing bond proceeds while acknowledging that the jury convicted him of securities fraud when he allegedly lied to Morgan Stanley.

### b. *The Conspiracy Count*

The same analysis holds true for Count One, conspiracy to commit securities fraud. As the Court explained to the jury, "Count One charges that each of the defendants agreed to commit securities fraud in connection with the Wakpamni bonds." [Trial Tr. 4163:11-16 (Charge).] The three elements of the crime were:

> First, the government must prove the existence of the conspiracy charged in Count One of the indictment; that is, the existence of an agreement or understanding to commit the unlawful object of the charged conspiracy, which in this case is securities fraud. The first element then is: Did the conspiracy alleged in the indictment exist? Was there such a conspiracy; and Second, the government must prove that the defendant you are considering willfully and knowingly became a member of the conspiracy, with intent to further its illegal purposes -- that is, with the intent to commit the object of the charged conspiracy; and Third, the Government must prove that any one of the conspirators -- not necessarily a defendant, but any one of the parties involved in the conspiracy -- knowingly committed at least one overt act in furtherance of the conspiracy during the life of the conspiracy, in the Southern District of New York.

*Id.* at 4164:23-4165:17.

The Court then expanded on each element. The "the object of the conspiracy charged in Count One of the indictment is securities fraud. In order to prove that a defendant is guilty of the conspiracy offense charged in Count One, the government must establish beyond a reasonable doubt that that defendant agreed with others to commit securities fraud." *Id.* at 4169:10-18. Importantly, for the present purposes, the Court explained, "<u>It is not necessary for the government to show that a defendant was fully informed as to all of the details of the conspiracy in order for you to infer knowledge and intent on his part. To have guilty knowledge, a defendant need not have known the full extent of the conspiracy, or all of the activities of all the conspiracy all of the conspiracy participants</u>." *Id.* at 4170:5-20 (emphasis added).

The Court instructed the jury multiple times that the object of the conspiracy was "to commit securities fraud," *not* that the object of the conspiracy was necessarily Jason Galanis's



entire scheme. *See, e.g., id.* at 4172:10-15. The Court explicitly told the jury the opposite: that the defendant need not know of the full extent of the conspiracy.

This is precisely how the government argued the case to the jury. When explaining why Hugh Dunkerley – the government's key cooperating witness – was guilty of conspiracy even though he testified he did not know that Jason Galanis misappropriated bond proceeds, the government said:

> I expect Judge Abrams will instruct you it is not necessary for the government to show that a defendant was fully informed as to all details of the conspiracy in order for you to infer knowledge and intent on his part. To have guilty knowledge, a defendant need not have known the full extent of the conspiracy, or all of the activities of all of the conspiracy's participants. And that's some more law. The duration and extent of a defendant's participation has no bearing on the issue of that defendant's guilt. Conspirators can perform separate and distinct acts. . . . Even though he might not have been fully informed about every detail of the conspiracy and the scheme, he is still guilty. And this law applies to these defendants as well.

*Id.* at 4094:4-24 (government rebuttal). That is, the government argued expressly that Dunkerley was guilty of the same conspiracy with which Mr. Archer was charged, even though he did not know that Jason Galanis had misappropriated bond proceeds.

This is also why the government emphasized to the jury the evidence concerning Mr. Archer's statements to Morgan Stanley and the BIT Board. This was, in the government's view, evidence "that Devon Archer knew full well that he was participating in a fraud . . . . [L]iterally at the exact same time as Devon Archer is promising the BIT board that Jason Galanis will have nothing to do with Burnham, Devon Archer is literally on that day buying the $15 million bonds that Jason Galanis has coordinated and for which Burnham is the placement agent." [Trial Tr. 3661:10-3662:6 (government summation).]

Like with the substantive offense of securities fraud, and just as the government argued with respect to Dunkerley, the Court may accept the jury's verdict that Mr. Archer conspired to commit the substantive offense without finding that he necessarily knew of the larger scheme. As charged to the jury, it was enough that (for example) Mr. Archer's statements to Morgan Stanley and the BIT Board in fact did "relate" to the scheme alleged in the indictment – that is, there is a connection to the bond scheme.

When it sentenced Michelle Morton, the Court seemed to recognize that being guilty of this conspiracy does not entail knowing its full sweep. Morton pled guilty to Count One – the same conspiracy count Mr. Archer was convicted of committing – as well as a count concerning investment advisor fraud. As the Court noted at her sentencing, when "Ms. Morton pled guilty, she acknowledged that her conduct enabled Jason Galanis to steal the bond proceeds through the broader fraud that led her investors to lose money, but she specifically disclaimed any knowledge of that broader fraud, and the government was comfortable with that allocution at the



time." [12/07/20 Morton Sentencing Tr. at 19:13-21, ECF No. 946.]  The Court likewise seemed to credit that Morton did not have "any knowledge of the broader fraud."

In other words, Morton conspired to commit securities fraud in connection with improperly using client funds to buy the bonds. She was, in essence, on the opposite end of the scheme from Mr. Archer, who did not know of the investment advisor fraud. But they both were guilty at sentencing of joining a conspiracy that was "related" to the overall scheme alleged in the indictment. This is how the Court was able to distinguish Morton from many other coconspirators:

> All that said, I do view Ms. Morton's role as distinguishable from that of many of her coconspirators, as I alluded to earlier. Critically, from my perspective, <u>there's no direct evidence that she knew that the WLCC had been fraudulently induced to issue the bonds or that the bond proceeds were stolen</u>. Indeed, while she acknowledged during her plea allocution that her conduct enabled Jason Galanis to steal the bond proceeds through a broader fraud that led her investors to lose money, she disclaimed any knowledge of that broader fraud, and in that respect, it makes the guideline that is driven by the loss amount significantly less useful here."

[12/07/20 Morton Sentencing Tr. at 33:2-12, ECF No. 946 (emphasis added).]

Morton's lack of knowledge of the broader fraud made the loss amount "significantly less useful."[5] For Mr. Archer, consistent with evidence at trial and the Court's prior findings on the Rule 33 motion, Mr. Archer's lack of knowledge of the broader fraud should have eliminated the loss amount entirely.

Whether the Court was required to assume Mr. Archer's knowledge of the entire scheme because it was "implicit" in the jury's verdict is easily a "close" question, in the sense that it "very well could be decided the other way." *Randell*, 761 F.2d at 125 (cleaned up).

**C.    If Resolved in Mr. Archer's Favor, His Appeal Would Likely Result in a Different Outcome and Certainly Would Not Be Decided Until Mr. Archer Serves His Term of Imprisonment**

If the defendant has raised a "substantial question," the Court must then determine whether, "if that substantial question is determined favorably to defendant on appeal, that decision is likely to result in" one of the outcomes listed under § 3143(b)(B)(i)-(iv). *Randell*, 761 F.2d at 125. Looking at the sentencing question specifically, if resolved in Mr. Archer's favor, a remand for sentencing would likely result either in "a sentence that does not include a term of

---

[5]    Because Morton admitted to knowing that the first and third bond issuances were placed with the investment advisory clients without full disclosure, it was still correct to hold her responsible for the full loss amount even if she did not know Galanis was stealing the proceeds, because she exposed the clients to a risk of loss.  It is presumably for this reason why the Court used the full loss amount, but recognized that it was "significant less useful" than in other cases.



imprisonment, or [ ] a reduced sentence to a term of imprisonment less than . . . the expected duration of the appeal process." 18 U.S.C. § 3143(b)(B)(iii)-(iv). Stated differently, if Mr. Archer's sentence is not stayed, then he may spend more time in prison than he should. This would result in a serious injustice to Mr. Archer, whereas the cost to the public of a stay, especially in light of the six years he has already been released under supervision, is negligible.

At sentencing, the Court considered Mr. Archer's guidelines range of 108 to 135 months. Should the Second Circuit remand for specific findings independent of what may have been "implicit" in the jury's verdict beyond the elements of the crime, there is a real possibility that Mr. Archer's guidelines range will be substantially lower, as low as 0 to 6 months if the Court finds that Mr. Archer did not reasonably foresee losses to any victim beyond the WLCC. Further, the Court's analysis under the § 3553(a) factors may change significantly.

This is not just speculation. As Your Honor noted at sentencing, the Court "stand[s] by" its earlier opinion granting Mr. Archer a new trial in terms of the denial of Mr. Archer's motion for acquittal but with "the reservations" expressed in the opinion concerning the evidence under Rule 33. Yet the Court nonetheless believed it was required to assume that Mr. Archer had expansive knowledge of all facets of the scheme based on what the Court viewed as the implicit meaning of the verdict. This assumption that the Court lacked discretion to engage in independent fact-finding permeated sentencing. [*See* 02/28/22 Archer Sentencing Tr. at 6:6-8 ("I don't think I can do that consistent with the facts implicit in the jury's verdict."), 7:25-8:9 ("I have to accept the facts that are implicit in a finding of guilt with respect to these crimes."), 17:23-18:1 (". . . need to be consistent with the facts implicit in the jury's verdict."), 20:15-20 ("adopting the PSR" because "the theory of the case as presented in the PSR is what is consistent with the jury's verdict"), 24:5-16 ("I believe I must accept that he knew that the investment advisor clients were being defrauded and that the tribal bond proceeds were being misappropriated."), 25:20-25 ("accepting the factual findings I believe were implicit in the jury's verdict . . . ."), 28:24-29:2 ("Mr. Archer's actions, accepting the facts implicit in the jury's verdict . . . .").]

Should the Court be free to make its own determination of the scope of Mr. Archer's knowledge, we respectfully submit that it is likely that the Court would find facts consistent with its earlier decision and not what the Court believed may have been implicit in the jury's verdict. *See Gall v. United States*, 552 U.S. 38, 51 (2007) ("The sentencing judge is in a superior position to find facts and judge their import under § 3553(a) in the individual case. The judge sees and hears the evidence, makes credibility determinations, has full knowledge of the facts and gains insights not conveyed by the record." (cleaned up)). With a narrower finding with respect to the scope of Mr. Archer's knowledge, Mr. Archer's proper guidelines range will be substantially lower, and we believe that Mr. Archer's sentence would likely be shorter, as well.

\*     \*     \*

Mr. Archer respectfully requests that the Court stay the imposition of his sentence pending appeal. For similar reasons, the Court should stay the imposition of any order of forfeiture. *Compare Galanis*, 366 F. Supp. 3d at 500 (finding evidence at trial did not establish that Mr. Archer "knew Galanis was stealing the bond proceeds."), *with* 02/28/22 Archer Sentencing Tr. at 7:25-8:23 (finding that the Court must "accept the facts that are implicit in a



finding of guilt" and must therefore "accept that [Mr. Archer] knew that the investment advisor clients were being defrauded and that the tribal bond proceeds were being misappropriated."). The Court may exercise its discretion to stay the enforcement of the forfeiture order under Federal Rule of Criminal Procedure 32.2(d). *See, e.g.*, *Silver*, 203 F. Supp. 3d at 386 (staying forfeiture but ordering that defendant "may not transfer or encumber his assets (such as by taking out loans) and must refrain from dissipating his assets").

Respectfully,

  /s/ Matthew L. Schwartz
Matthew L. Schwartz