


MATTHEW L. SCHWARTZ
Tel.: (212) 303-3646
E-mail: mlschwartz@bsfllp.com

August 2, 2023

**BY ECF**

Hon. Ronnie Abrams
United States District Judge
United States District Court
Southern District of New York
40 Foley Square
New York, New York 10007

Re: *United States v. Jason Galanis, et al*., 16 Cr. 371 (RA)

Dear Judge Abrams:

We represent Devon Archer and write in opposition to the Government's request to set a surrender date while Mr. Archer continues his appeal to the United States Supreme Court, and a parallel petition for a writ of habeas corpus. With respect to his direct appeal, as the Court previously found when granting Mr. Archer's motion for bail, Mr. Archer's appeal raises a "substantial question of law or fact," and he would likely serve the entirety of his sentence before his appeal is decided. [ECF No. 1017, at 14]. Further, the government has now conceded that there was a straightforward sentencing error that, while deemed forfeited for purposes of Mr. Archer's direct appeal, will result in what should be a successful habeas petition and resentencing. Accordingly, we respectfully request that the Court deny the Government's motion to set a surrender date. [ECF No. 1073].

Mr. Archer will file his petition for writ of certiorari on or before the October 16, 2023 deadline. Mr. Archer anticipates raising several grounds in his petition, including but not limited to (1) the Second Circuit's misapplication of the Federal Rule of Criminal Procedure 33 standard, which is in tension with the Rule 33 jurisprudence in virtually every other Circuit; (2) the Second Circuit's holding that this Court did not err in deferring to facts it believed were "implicit" in the jury's verdict, even if not necessarily found by the jury beyond a reasonable doubt; and (3) the Second Circuit's refusal to review a conceded and plain Sentencing Guidelines error. A reversal of the Second Circuit's new interpretation of Rule 33 would result in a new trial for Mr. Archer. Alternatively, a remand for resentencing – whether as a result of further appeal or habeas relief – with an accurate and lower Guidelines range may result in a lower sentence. Either way, the imposition of his sentence now would deny Mr. Archer the benefit of his appeal, if successful. *See* 18 U.S.C. § 3143(b).

**ARGUMENT**

## A. Legal Standard

The Court is familiar with the standard for when to stay the imposition of a sentence pending appeal. Section 3143 of Title 18 of the United States Code instructs a court to stay the imposition of a sentence of imprisonment pending appeal provided the court finds:

> (A) by clear and convincing evidence that the person is not likely to flee or pose a danger to the safety of any other person or the community if released under section 3142(b) or (c) of this title; and
>
> (B) that the appeal is not for the purpose of delay and raises a substantial question of law or fact likely to result in –
>
> (i) reversal,
>
> (ii) an order for a new trial,
>
> (iii) a sentence that does not include a term of imprisonment, or
>
> (iv) a reduced sentence to a term of imprisonment less than the total of the time already served plus the expected duration of the appeal process.

18 U.S.C. § 3143(b)(1). The Second Circuit has further broken the second clause of subsection (B) down into discrete questions. The Court must first determine whether "the appeal raises a substantial question of law or fact," and, if so, then determine "if that substantial question is determined favorably to defendant on appeal, that decision is likely to result in" one of the outcomes listed under § 3143(b)(1)(B)(i)-(iv). *United States v. Randell*, 761 F.2d 122, 125 (2d Cir. 1985) (citing 18 U.S.C. § 3143(b)).

As the Court previously observed, even where the Court believes its rulings are correct and that the appeal will not succeed, bail is still appropriate when the appeal raises questions that could be decided the other way. [*See* ECF No. 1017, at 14]. This analysis does not change when the appeal is to the Supreme Court instead of a circuit court. *See Morison v. United States*, 486 U.S. 1306 (1988) (the "standard for determining whether a convicted defendant is entitled to be released pending a certiorari petition is clearly set out in [Section] 3143(b), and the only real issue . . . is whether [defendant's] appeal raises a substantial question of law or fact"). *See also* Order, *United States v. Cohen*, No. 1:98-cr-00434-TPG-1 (S.D.N.Y. Jan. 16, 2002) ("Since the [defendant] has remained on bail for almost a year and a half during the appeal process thus far, and no problems have arisen, there is no good reason for revoking bail prior to the completion of the [Supreme Court appeal] process.") (continuing bail for defendant while cert petition pending despite appellate court's affirmance of conviction); *Williamson v. United States*, 184 F.2d 280 (2d Cir. 1950) (same); *United States v. Rafsky*, 1987 WL 7196 (E.D. Pa. Feb. 26, 1987) (same).

**B. Mr. Archer Is Not a Flight Risk and Is Not Appealing for the Purpose of Delay**

On Mr. Archer's previous application, the Government did not dispute that Mr. Archer is not a flight risk or a danger to the community, nor did it dispute that delay is not the purpose of the appeal. [*See* ECF No. 1017, at 14]. The same is true today. There is no basis on which the Court could find that Mr. Archer is appealing for the purpose of delay – he has steadfastly

maintained his innocence, appeared at every conference, participated directly in his own defense, and intends to litigate important issues before the Supreme Court. This Court has already adjourned sentencing once before when Mr. Archer filed a petition to the United States Supreme Court for a writ of certiorari. [*See* ECF No. 956].

**C. Mr. Archer's Appeal Will Raise at Least Three Substantial Questions of Law or Fact**

**1. Whether the Second Circuit Misapplied the Rule 33 Standard Continues to Be a "Substantial Question"**

The Court previously determined that Mr. Archer demonstrated "good cause" under Federal Rule of Criminal Procedure 32(b)(2) to adjourn his sentence when he filed his petition with the Supreme Court concerning the Second Circuit's decision "clarifying" Rule 33. [*See* ECF No. 956]. As we explained in that earlier application, the panel decision created a conflict with ten other circuits when it held that a district judge cannot reweigh evidence and grant a new trial if the jury "was entitled" to convict. *United States v. Archer*, 977 F.3d 181, 187 n.3 (2d Cir. 2020); *see id.* at 188 ("[A]bsent a situation in which the evidence was patently incredible or defied physical realities, or where an evidentiary or instructional error compromised the reliability of the verdict, a district court must defer to the jury's resolution of conflicting evidence."). *Contra, e.g.*, *United States v. Stacks*, 821 F.3d 1038, 1046 (8th Cir. 2016) (rejecting argument that evidence must be "physically impossible"); *United States v. Washington*, 184 F.3d 653, 657 (7th Cir. 1999) (evidence can be reweighed even when "not inconsistent with physical reality or otherwise incredible"). The Second Circuit's decision not only created a deep circuit split, but it also functionally collapsed the Rule 29 and Rule 33 standards in weight-of-the-evidence cases. *Cf. United States v. Truman*, 688 F.3d 129, 139 (2d Cir. 2012) (holding that under Rule 29, courts must draw all inferences in favor of the government unless the evidence is "incredible on its face" or "def[ies] physical realities").

We recognize that the Supreme Court previously declined to address the Rule 33 issue, *see Archer v. United States*, No. 20-1644, 142 S. Ct. 425 (Mem), 2021 WL 5043584 (2021) (denying cert petition), but the appeal is now ripe. The government opposed certiorari on this issue largely because of the interlocutory nature of the appeal. *See* Brief for the United States, *Archer v. United States*, No. 20-1644, 2021 WL 4441408, at *6–7 (Sept. 24, 2021). Presently the Supreme Court now has occasion to further refine the Rule 33 standard in subtle but important ways that could cause the Supreme Court to vacate Mr. Archer's conviction.

**2. Whether the Court's Deference to the Jury's Verdict in Making Sentencing Fact-Finding Was Error Is at Least a "Substantial Question"**

At the time the Court previously issued a stay pending appeal, it did so following argument at Mr. Archer's sentencing as to whether the Court improperly over-relied on the jury's verdict. In particular, the Court held that it was constrained by facts that it believed were "implicit" in the jury's verdict, even if not necessarily found by the jury beyond a reasonable doubt. This continues to be at least a "substantial question." 18 U.S.C. § 3143(b)(1)(B)(3).

At sentencing, the Court reiterated its independent view of the evidence as set out in its Rule 33 decision, *see* 02/28/22 Archer Sentencing Tr. at 2:9-14, but nevertheless explained that it felt constrained to sentence Mr. Archer based upon the facts that Your Honor believed were "implicit" in the jury's verdict, *see id.* at 20:24, 25:21, 29:1. As a result, the Court held Mr. Archer liable for the full loss amount, and all of the victims, involved in Jason Galanis's scheme.

But the Supreme Court differentiates between elements of a crime, which are decided by the jury, and "[s]entencing factors," which "can be proved to a judge at sentencing by a preponderance of the evidence." *See United States v. O'Brien*, 560 U.S. 218, 224 (2010); *United States v. Salazar*, 489 F.3d 555, 557 (2d Cir. 2007). While a sentencing court must defer to the jury's conclusions as to each element of the crime and any facts necessarily logically entailed by a guilty verdict, any other facts are for the court to find. *See, e.g.*, *United States v. Sanchez*, 925 F. Supp. 991, 1002 (S.D.N.Y. 1996) (sentencing judge "agree[ing] that the jury necessarily made [some] findings but disagree[ing] that it was necessary for the jury to make [another] finding.").

Other circuits likewise require sentencing courts to engage in independent fact-finding when determining sentencing factors. *See, e.g.*, *United States v. Raia*, 993 F.3d 185, 194 (3d Cir. 2021) ("Because the fact that Raia instructed his campaign workers to bribe voters is not *necessarily* implicit in the verdict, we cannot say that Raia's testimony was false. We will not, therefore, direct the application of the obstruction of justice enhancement." (emphasis added)).

This fact-finding role is particularly important in conspiracy and scheme cases because "the scope of conduct for which a defendant can be held accountable under the sentencing guidelines is significantly narrower than the conduct embraced by the law of conspiracy." *United States v. Perrone*, 936 F.2d 1403, 1416 (2d Cir. 1991), *decision clarified on reh'g*, 949 F.2d 36 (2d Cir. 1991). For example, "to obtain a conviction for conspiracy, the government must demonstrate that the accused had some knowledge of the unlawful aims of the conspiracy, but it is not necessary to demonstrate that the accused knew all of the unlawful aims of the scheme charged." *Id.* at 1417.

Consistent with *Perrone*, Mr. Archer's jury was instructed that he "need not have known the full extent of the conspiracy, or all of the activities" to be convicted. Trial Transcript at 4170:8-11. Thus, the jury could have convicted without finding beyond a reasonable doubt that Mr. Archer knew of every part of the alleged scheme, let alone that he reasonably foresaw all of its victims and losses. The government made precisely this argument to the jury, both about Mr. Archer and about other conspirators. *See Id.* 4098:12-14 ("I alert you to that portion of the charge, that there are multiple ways to be found guilty of Count Two."); 4094:21-4095:3 ("Even though he might not have been fully informed about every detail of the conspiracy and the scheme, he is still guilty. And this law applies to these defendants as well . . . . in a big conspiracy like this one, different defendants play different roles.").

At sentencing, however, the Court incorrectly stated that it had to "accept the facts that are implicit in a finding of guilt" and therefore was forced to "accept that [Mr. Archer] knew that the investment advisor clients were being defrauded and that the tribal bond proceeds were being misappropriated." 02/28/22 Archer Sentencing Tr. at 7:25-8:9. This was legal error. To attribute any particular conduct or knowledge to the defendant, a sentencing court must find "(1) that the acts were within the scope of the defendant's agreement and (2) that they were foreseeable to the

defendant." *United States v. Studley*, 47 F.3d 569, 574 (2d Cir. 1995); *see also United States v. Johnson*, 378 F.3d 230, 238 (2d Cir. 2004) (applying the *Studley* test as part of a conspiracy charge).

The Court should not have assumed Mr. Archer's knowledge of the entire scheme based on the verdict, because the jury was not required to find that Mr. Archer knew about the entire scheme to convict. This remains a "substantial question" that satisfies the requirements of Section 3143(b), regardless of the Second Circuit's recent affirmance.

**3. Whether the Court Plainly Erred at Sentencing by Using an Incorrectly Calculated Guidelines Range Is at Least a "Substantial Question"**

In addition, Mr. Archer identified another sentencing error – now conceded by the government – that raises a "substantial question" on both direct appeal and that will be presented in a forthcoming habeas petition.

At sentencing, the Court miscalculated Mr. Archer's Sentencing Guidelines range as a product of simple mathematical error. The Guidelines range calculation error went unnoticed by both parties until the undersigned identified and raised the issue with the Government shortly before the May 9, 2023 argument before the Second Circuit on Mr. Archer's appeal. In subsequent briefing at the appeals Court's request, the government conceded that the "District Court misstated the Guidelines Range" because the Court did not subtract two levels from Archer's total offense level after determining that he was entitled to a two-level reduction "based on Archer's minor role." Post-Argument Letter Brief of the United States, *United States v. Galanis*, No. 22-539 (2d Cir.), ECF No. 70, at 1. "That should have resulted in an offense level of 29 and a Guidelines range of 87 to 108 months' imprisonment. But [the Court] stated that the offense level was 31 and the Guidelines range was 108 to 135 months' imprisonment." *Id.* The Court nonetheless sentenced Mr. Archer by reference to the incorrect, higher Guidelines range.

After Mr. Archer raised the miscalculation issue at oral argument, the panel requested supplemental briefing on "whether the district court miscalculated the applicable Sentencing Guidelines range, and if so, whether Defendant-Appellant has forfeited his claim of error." Order, *United States v. Galanis*, No. 22-539, ECF No. 69, at 1. The government's submission conceded the miscalculation but argued that Archer had "waived," *i.e.*, intentionally relinquished, the error. Post-Argument Letter Brief of the United States, *United States v. Galanis*, No. 22-539, ECF No. 70, at 1-2. The panel affirmed the judgment. In doing so, it did not accept the government's waiver argument, but instead held that it was refusing to consider the calculation error because it had been "forfeited" by Mr. Archer. Summary Order, *United States v. Galanis*, No. 22-539, ECF No. 75-1, at 17 n.2.

Because Mr. Archer had not discovered the Guidelines calculation error until the day prior to oral argument, the claim of error was not waived, even if it was untimely. *United States v. Holland*, 394 F. App'x 766, 768-69 (2d Cir. 2010) (arguments that are merely untimely, even arguments that are raised "[a]t oral argument, for the first time," are subject to "review . . . for plain error"). Having concluded that the miscalculation claim was "forfeited" rather than waived and having received the government's concession that there was an error, the panel should have proceeded to review Mr. Archer's claim for plain error.

In *Rosales-Mireles v. United States*, 138 S. Ct. 1897 (2018), the Supreme Court set out the four-prong test for when "an error in the calculation of the Guidelines range goes unnoticed by the court and the parties." *Id.* at 1905. Once the defendant has passed the first hurdle of showing that there was no waiver, the requirements are that:

> the error is plain, and [] the error affected the defendant's substantial rights. If those conditions are met, the court of appeals should exercise its discretion to correct the forfeited error if the error seriously affects the fairness, integrity or public reputation of judicial proceedings. This last consideration is often called *Olano*'s fourth prong. The issue here is when a Guidelines error that satisfies *Olano*'s first three conditions warrants relief under the fourth prong.

*Id.* (citations omitted). Here, the fact that the "error is plain," *id.*, is undisputed: the Court made a two-level Guidelines miscalculation, and this plain arithmetic error was conceded by the government. Post-Argument Letter Brief of the United States, *United States v. Galanis*, No. 22-539, ECF No. 70, at 1.

This error also affected Mr. Archer's substantial rights because there is a "reasonable probability that [defendant] would have been subject to a different sentence but for the error." *Rosales-Mireles*, 138 S. Ct. at 1908-09. As the Supreme Court explained:

> Where [] the record is silent as to what the district court might have done had it considered the correct Guidelines range, the court's reliance on an incorrect range in most instances will suffice to show an effect on the defendant's substantial rights. Indeed, in the ordinary case a defendant will satisfy his burden to show prejudice by pointing to the application of an incorrect, higher Guidelines range and the sentence he received thereunder.

*Molina-Martinez*, 578 U.S. 189, 200-01 (2016); *accord Rosales-Mireles*, 138 S. Ct. at 1907 (2018); *cf., e.g.*, *United States v. Acoff*, 708 F. App'x 3, 5 (2d Cir. 2017) (no prejudice where court "expressly stated" it would have imposed the same sentence under different guidelines). Here, the Court did not find that it would have given the same downward-varying sentence, regardless of a change in the Guidelines range; therefore, *Molina-Martinez* required a determination by the appellate court that the error affected Mr. Archer's substantial rights.

Indeed, the Second Circuit has held that a calculations error affected substantial rights in identical circumstances in *United States v. Bennett*, 839 F.3d 153, 162 (2d Cir. 2016). There, the district court had miscalculated the Guidelines range and handed down a "below-Guidelines" sentence; the error was held to affect substantial rights because the court had "use[d] the sentencing range as the beginning point to explain the decision to deviate from it" and "anchored" its analysis on the miscalculation by "return[ing] multiple times to the" Guidelines. *Bennett*, 839 F.3d at 163.

Whether the panel was required to vacate Mr. Archer's conviction in light of the plain and conceded Guidelines range calculate error is easily a "close" question, in the sense that it "very well could be decided the other way." *Randell*, 761 F.2d at 125. And regardless, the Court will be able to correct the conceded error on habeas review, presumably resulting in a lower sentence.

**D. If Resolved in Mr. Archer's Favor, His Appeal Would Likely Result in a Different Outcome and Certainly Would Not Be Decided Until Mr. Archer Serves His Term of Imprisonment**

As before, if the stay of Mr. Archer's sentence is not extended, then he may spend more time in prison than he should. *See* 18 U.S.C. § 3143(b)(1)(B)(iii)-(iv) (directing a court to consider whether the appeal would likely result either in "a sentence that does not include a term of imprisonment, or [] a reduced sentence to a term of imprisonment less than . . . the expected duration of the appeal process"). For example, if Mr. Archer serves his sentence, then a grant of a new trial under Rule 33 will be pointless. This would result in a serious injustice to Mr. Archer, whereas the cost to the public of a further incremental stay, especially in light of the seven years he has already been released under supervision, is negligible.

If Mr. Archer serves his sentence now, he will also be denied the opportunity to be held to the correct and lower Guidelines range. At sentencing, the Court considered Mr. Archer's Guidelines range of 108 to 135 months. Should the Supreme Court vacate Mr. Archer's sentence and remand, or should this Court grant habeas review, the Court will re-sentence Mr. Archer with a substantially lower Guidelines range. *See* 02/28/22 Archer Sentencing Tr. at 27:16-23, 39:4-7, 43:12-16 (invoking erroneous guidelines range as start for sentencing decisions). Your Honor also observed that the crimes were "too serious" to warrant a shorter sentence, *id.* at 42:22, a conclusion that was "necessarily reflective of the Guidelines range," *Bennett*, 839 F.3d at 163. The record shows that "the miscalculated Guidelines range may well have anchored the District Court's thinking as to what an appropriate sentence would be," *id.* at 162, and the appropriate time and place to determine the impact of a new range is at resentencing.

* * *

Mr. Archer respectfully requests that the Court continue to stay his sentence pending the resolution of Mr. Archer's petition to the Supreme Court and his habeas petition. Alternatively, if the Court deems it necessary to set a report date now, Mr. Archer respectfully requests that the Court set an October 31, 2023 report date and that such date be without prejudice to Mr. Archer's application for a longer-term stay. By that date, Mr. Archer will have submitted his certiorari petition to the Supreme Court (due October 16, 2023) and his habeas petition to this Court, and Your Honor will have had the opportunity to form an independent view of their merits. Either way, we will of course keep the Court apprised of developments before the Supreme Court.

Thank you for your consideration.

Respectfully,

*/s/ Matthew L. Schwartz*
Matthew L. Schwartz