

MATTHEW L. SCHWARTZ
Tel.: (212) 303-3646
E-mail: mlschwartz@bsfllp.com

August 14, 2023

**BY ECF**

Hon. Ronnie Abrams
United States District Judge
United States District Court
Southern District of New York
40 Foley Square
New York, New York 10007

      Re:    *United States v. Jason Galanis, et al.*, 16 Cr. 371 (RA)

Dear Judge Abrams:

      Mr. Archer respectfully submits this letter pursuant to the Court's August 7, 2023 Order [ECF No. 1077], and to respond to the Government's letter of August 11, 2023 [ECF No. 1078]. Mr. Archer agrees to the Court recharacterizing his motion as a petition for habeas relief under 28 U.S.C. § 2255 and consents to the Court granting habeas relief. Mr. Archer respectfully requests that, following the submission of supplemental sentencing memoranda, the Court proceed to resentencing.

      As the Court noted, the parties agree that Mr. Archer was sentenced by reference to an incorrect, higher Guidelines range. Because the higher Guidelines range was "the beginning point to explain the decision to deviate from it," the error affected Mr. Archer's substantial rights. *United States v. Bennett*, 839 F.3d 153, 163 (2d Cir. 2016).

      The Government is wrong when it asserts that the Court's Guidelines calculation error is not cognizable under Section 2255. To the contrary, plain Guidelines errors are often addressed through habeas relief, as the failure to notice such a plain error can have a Constitutional dimension under the Sixth Amendment. *See, e.g.*, *Johnson v. United States*, 313 F.3d 815, 818 (2d Cir. 2002) (standard met when counsel failed to challenge sentencing miscalculation in PSR later adopted by the court and when there was "reasonable probability" of lighter sentence had counsel pointed out the error); *Williams v. United States*, No. 14 Civ. 829 (KMW), 2015 WL 710222, at *5-6 (S.D.N.Y. Feb. 19, 2015) (granting habeas relief where trial counsel failed to object to erroneous Guidelines calculation in PSR); *Oklu v. United States*, Nos. 12 Cr. 177 & 14 Civ. 845 (WHP), 2016 WL 2731581, at *1 (S.D.N.Y. Apr. 27, 2016) ("Because the guidelines range was miscalculated, this Court concludes that Oklu's counsel rendered ineffective assistance, and that his habeas petition should be granted and his sentence vacated."). In fact, the Supreme Court has held that the failure to object to an erroneous Guidelines calculation – in that case, a grouping error – can result in a valid ineffective assistance of counsel claim. *See Glover v. United States*, 531 U.S. 198, 203 (2001).

By failing to notice, and thus failing to object to, an obvious arithmetic error that increased Mr. Archer's Guidelines range, "counsel's representation fell below an objective standard of reasonableness." *Strickland v. Washington*, 466 U.S. 668, 688 (1984); *see also Massaro v. United States*, 538 U.S. 500, 505 (2003) ("[A] defendant claiming ineffective counsel must show that counsel's actions were not supported by a reasonable strategy and that the error was prejudicial."). As in *Oklu*, "counsel's 'failure to object to the calculation error was a clear lapse in representation.'" 2016 WL 2731581, at *2 (quoting *Johnson*, 313 F.3d at 818).

Moreover, "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694. There is no question that had the error been objected to at sentencing, the calculation would have been fixed, which very well may have resulted in a lower sentence. [ECF No. 1076, at 7]; *see Bennett*, 839 at 162 n.6, 163 (2d Cir. 2016) (holding that Guidelines error was prejudicial in circumstances where (1) sentencing court "use[d] the sentencing range as the beginning point to explain the decision to deviate from it" and "anchored" its analysis on the miscalculation by "return[ing] multiple times to the" Guidelines, and (2) defense counsel's failure to object to the error implicated "an ineffective-assistance-of-counsel claim").

In arguing that the Court should deny habeas relief, the Government relies exclusively on *United States v. Hoskins*, 905 F.3d 97 (2d Cir. 2018). That case has *nothing* to do with this one; the Government's reliance on it is inexplicable. To begin with, that case did not involve a claim of ineffective assistance of counsel. That phrase does not appear in the decision, nor is *Strickland* cited. To the contrary, the issue in *Hoskins* was that the defendant was sentenced as a career offender, but *after* he was sentenced, one of his prior convictions was vacated, rendering him no longer a career offender. But "[c]ertainly, at the time the district court initially imposed that sentence, applying the career offender enhancement to his Guidelines calculation was not error – constitutional, legal, or jurisdictional." *Id.* at 103.

Further, *Hoskins* arose under very specific, and easily distinguishable, facts. The Second Circuit itself cautioned against drawing any "categorical conclusion" from its holding because its analysis was limited to "[t]he unique facts of this case." *Id.* at 104 n.7. In *Hoskins*, the defendant was sentenced pursuant to a plea agreement in which he had "bargained for" multiple benefits in exchange for a "below [] Guidelines" sentence. *Id.* at 103-04. The plea bargain allowed the defendant to avoid a superseding indictment and an enhanced mandatory minimum sentence of ten years. *Id.* at 102. While the plea agreement (correctly) acknowledged that Hoskins was eligible to receive a career offender enhancement, the plea agreement also provided for a stipulated sentence that was below the Guidelines range that applied to the defendant as a career offender, and within the range he would have received without the enhancement. Then after sentencing, as noted, one of the defendant's prior convictions was vacated on technical grounds (not because the "defendant was actually innocent" of the alleged crime). *Id.* at 100 n.3, 103.

Finally, the sentence in *Hoskins* not only followed a plea agreement with a stipulated Guidelines range, but it was a Rule 11(c)(1)(C) agreement – that is, one in which the parties "agree that a specific sentence or sentencing range is the appropriate disposition of the case," Fed. R. Crim. P. 11(c)(1)(C) – and Hoskins was sentenced within the agreed-upon range. *Hoskins*, 905 F.3d at 99. Hoskins not only agreed to the proper application of the Guidelines, but he specifically

agreed in his plea agreement, and "urged" in his sentencing submission, that the district court sentence him to 112 months' imprisonment, *id.* at 100, which is precisely what the court did, *id.*

Thus, unlike the miscalculation error at Mr. Archer's sentencing, there was *no error* at Hoskins' sentencing. *Id.* at 103. The district court in *Hoskins* properly applied the law and sentenced the defendant to the precise sentence he requested – one which was the result of extensive bargaining including the government foregoing additional charges and sentencing enhancements. Because the sentence was legally correct and used a correct Guidelines range when it was rendered, the Second Circuit assessed the sentence under the substantive "reasonableness" standard. *Id.* at 104. And because the defendant's sentence was pursuant to a plea "deal that secured him real benefit" – a below-Guidelines sentence and the avoidance of additional charges – there was no "miscarriage of justice." *Id.* As the Second Circuit explained "[a] 'later development' that 'did not affect the lawfulness of the judgment itself – then or now,' is not enough to vacate the sentence imposed." *Id.* at 103 (quoting *United States v. Addonizio*, 442 U.S. 178, 186-87 (1978)).

*None* of those factors are present here. This Court's Guidelines miscalculation was a legal error when it occurred, as the Government has conceded. *See* Gov't Post-Argument Br., *United States v. Galanis*, No. 22-539 (2d Cir.), ECF No. 70, at 1. And unlike in *Hoskins*, the miscalculation did not stem from a plea agreement: rather, the miscalculation infected the sentencing because no counsel, neither the Government's nor Mr. Archer's, noticed the error. Thus, the only similarity between this case and *Hoskins* is that they involved below-Guidelines sentences. But *Hoskins* confirmed that there is no "categorical" rule denying habeas relief in the context of a below-Guidelines sentence, either. *Hoskins*, 905 F.3d at 104 n.7 (noting that a sentence under the advisory Guidelines was one factor "among others"). Instead, the critical distinction here is that, unlike in *Hoskins*, there was a "fundamental defect" that ran through the sentencing proceeding, thereby meriting habeas relief. *Id.* at 102 (quoting *Addonizio*, 442 U.S. at 185).

The Court should therefore proceed with its contemplated path to "grant[] habeas relief," [ECF No. 1077, at 1]. Because granting habeas relief will require a resentencing, Mr. Archer respectfully requests the opportunity to file a supplemental sentencing submission reflecting his changed circumstances since the February 28, 2022 sentencing. This updated submission is necessary to address the substantial civic, professional, and charitable responsibilities Mr. Archer has undertaken in the almost two-years since the previous sentencing, including his extensive cooperation with federal investigators (both law enforcement and Congressional), continued fundraising for multiple non-profit organizations, and sustained support for equal opportunity youth sports. A sentencing submission is also necessary to provide information to the Court about changes to Mr. Archer's health. The Court should consider, in any resentencing, Mr. Archer's changed circumstances and continued and good-faith participation with various governmental investigations. *See generally Pepper v. United States*, 562 U.S. 476 (2011).

Finally, Mr. Archer understands that recharacterizing his motion as one for habeas relief may result in any other collateral attack to his conviction or original sentence being considered an impermissible second or successive petition. *See Adams v. United States*, 155 F.3d 582, 582 (2d Cir. 1998). Nonetheless, I respectfully submit that it would be appropriate to allocute Mr. Archer

on this point to ensure that his consent is knowing and voluntary in light of the fact that I have represented Mr. Archer since the outset of these proceedings. Should the Court agree, I am happy to propose questions for such an allocution.

      Thank you for your consideration.

                                          Respectfully,

                                          */s/ Matthew L. Schwartz*
                                          Matthew L. Schwartz