

MATTHEW L. SCHWARTZ
Tel.: (212) 303-3646
E-mail: mlschwartz@bsfllp.com

March 1, 2024

**BY ECF**

Hon. Ronnie Abrams
United States District Judge
United States District Court
Southern District of New York
40 Foley Square
New York, New York 10007

  Re: *United States v. Jason Galanis, et al*., 16 Cr. 371 (RA)

Dear Judge Abrams:

  We represent the defendant Devon Archer and write in response to the government's letter dated February 15, 2024 [ECF No. 1091 ("Gov't Ltr.")], and in further support of Mr. Archer's request for resentencing. As we explain below and in our initial letter, [ECF No. 1089], unless and until the Court resentences Mr. Archer by reference to a correct Guidelines range, Mr. Archer may serve more time in prison than he otherwise should. The erroneously high Guidelines range was explicitly the anchor from which the Court determined his sentence, and ample case law supports the determination here that it would be unjust and adversely affect Mr. Archer's substantial rights to allow the current sentence to remain in place. With a minimal investment of judicial time and resources in a simple resentencing, this miscarriage of justice can be easily avoided.

  To start, the government argues the Court should not consider the body of case law demonstrating how the sentencing error here was significant and impacted Mr. Archer's substantial rights, because a habeas petition under 28 U.S.C. § 2255 is reviewed under a "miscarriage of justice" standard. Gov't Ltr. at 1 (quoting *United States v. Hoskins*, 905 F.3d 97, 102 (2d Cir. 2018)). But under § 2255, a criminal defendant may move to correct his sentence on multiple grounds, including that "that the sentence was imposed in violation of the Constitution or laws of the United States" or that the sentence "is otherwise subject to collateral attack." 28 U.S.C. § 2255(a). One of the ways that a defendant can demonstrate a miscarriage of justice, and succeed in challenging his sentence, is by demonstrating that the error was significant, would have resulted in a different outcome, and affected his substantial rights. *See Soto-Beltran v. United States*, 946 F. Supp. 2d 312, 319 (S.D.N.Y. 2013) ("Under the 'catch-all' ground, 'a criminal defendant must demonstrate an error of law or fact that constitutes a fundamental defect' in the proceedings and adversely affects his substantial rights, *thus producing* a 'miscarriage of justice.'" (quoting *United States v. Bokun,* 73 F.3d 8, 12 (2d Cir. 1995) (emphasis added)). Under the facts of this case, it is necessary to grant habeas relief to avoid a miscarriage of justice.

  The government does not deny that the sentencing error here affected Mr. Archer's substantial rights under *United States v. Bennett*, 839 F.3d 153 (2d Cir. 2016), and for good reason. The law is clear that a court commits a plain, and therefore necessarily prejudicial, error when it

calculates a guidelines range that is higher than it should be, *even when the court gives a substantial downward variance*. For example, in a case just decided this week, the Second Circuit remanded for sentencing where the sentencing court calculated a Guidelines range but failed to acknowledge that a statutory maximum capped the Guidelines range at a lower number. *See United States v. Wright*, No. 20-4200 (2d. Cir. Feb. 26, 2024) (Summary Order).[1] It did not matter that the trial court "applied a significant downward variance"; resentencing was necessary "because a miscalculated Guidelines range may well have anchored the district court's thinking as to what an appropriate sentence would be." *Id.* (cleaned up). The same is true here, where the correct range was 87 to 108 months' imprisonment, but the Court sentenced Mr. Archer based on a significantly higher range of 108 to 135 months.

The government argues that the sentencing error was simply not significant enough. That may have been true in a hypothetical world where this Court had already determined on the record that the sentence would have been the same under a lower Guidelines range. But the purpose of a new sentencing proceeding is to give the Court the opportunity to make that determination now on a corrected record, before Mr. Archer has served a sentence beyond what he might otherwise simply because of an arithmetic error in his Guidelines calculation. That is the miscarriage of justice that can be avoided. The government's cases (really, case) do not support a different view.

In *Hoskins*, and the case it relies on, *United States v. Addonizio*, 442 U.S. 178 (1979), the issue was whether a "later development" affected the lawfulness of an earlier sentencing. The answer was no in both cases. The Second Circuit's analysis in *Hoskins* was informed at each turn by the fact that the original Guidelines calculation was *correct*. The government points to *Hoskins*' observation that the previously-imposed sentence fell "in the middle of the [updated] Guidelines range," Gov't Ltr. at 1, but the Second Circuit noted that "*in the absence of procedural error*, within-Guidelines sentences will rarely be unreasonable." *Hoskins*, 905 F.3d at 104-05 (emphasis added). In other words, there was no miscarriage of justice when there was *no error* to begin with, and the sentence was still within a new proposed Guidelines range.

Even if *Hoskins* were not readily distinguishable on those grounds, the other facts of that case make it utterly useless in Mr. Archer's case. Most substantially, the original (correct) sentencing in *Hoskins* was the product a guilty plea pursuant to a Rule 11(c)(1)(C) agreement that *both* (1) involved the government's promise not to file "additional charges and an enhanced mandatory minimum sentence of ten years," and (2) both parties' agreement that a specific sentence—112 months' imprisonment, exactly—was the only appropriate one. 905 F.3d at 101. The Second Circuit therefore held, among other things, that the original sentence in *Hoskins* was not one that caused a miscarriage of justice because the defendant had explicitly agreed to the precise sentence that he received, and that he had received precisely what he "bargained for," including forbearance on additional charges and a mandatory minimum sentence that was higher than the agreed Rule 11(c)(1)(C) sentence: "Hoskins left the bargaining table with a deal that secured him real benefit, hardly indicating a miscarriage of justice." *Id.* at 104.

---

[1]   *Available at* https://ww3.ca2.uscourts.gov/decisions/isysquery/f6c7a820-74fa-4dbb-bf30-53c22c93e111/6/doc/20-4200_so.pdf.

These features of *Hoskins* render it totally and obviously inapplicable here, where Mr. Archer was sentenced following trial, objection to the Guidelines, and advocacy for a lower sentence than the one imposed. Grasping at straws—while at the same time recognizing how important the facts of *Hoskins* are—the government tries to argue the Mr. Archer did receive "a real benefit" because his sentence was less than what the government wanted. Gov't Ltr. at 2. But the question is not whether Mr. Archer got a "benefit," it is whether he got the benefit of *his bargain*—that is, whether he in some sense consented to and got bargained-for consideration for the sentence imposed. Here, Mr. Archer did not agree to anything. Further, and despite the government's sophistry, the Court's selection of an appropriate sentence, no matter how high or low, is not a "benefit" to a defendant. A court is required to sentence a defendant to the minimum sentence "sufficient, but not greater than necessary," to serve the purposes of sentencing. 18 U.S.C. § 3553(a). The fact that the government advocated for a higher sentence does not mean that Mr. Archer somehow received a "benefit," or that the government was penalized. The point in *Hoskins* was that there was no prejudice or harm to Hoskins where he got what he bargained for and no error affected his substantial rights. Neither is true here, where the Guidelines range was wrong and was the starting point for this Court's analysis, which (according to the Court's comments at sentencing, *see, e.g.*, Feb. 28, 2022 Hr'g Tr. 27:17-18, 43:12-15 (noting that the "recommended guideline sentence is 108 to 135 months in prison" and that the sentence given "is consistent with sentences imposed by other judges from this district in financial fraud cases with either *similar guidelines range*, roles, and/or loss amount" (emphasis added))) anchored the Court in its thinking on an appropriate sentence, as recognized in *Bennett* and *Wright*, cited above.

Nor does the government dispute that the failure to object to the incorrect Guidelines range fell below an objective standard of professional reasonableness. Gov't Ltr. at 2. Rather, it argues that Mr. Archer cannot show that there is a reasonable probability that, but for counsel's error, the result of the proceeding would have been different. *Id.* That argument is pure speculation. The government argues that because the Court (1) recognized that the incorrect Guidelines range was too high, and (2) sentenced Mr. Archer to a year and a day, which is below the correct range, the Court would not have sentenced Mr. Archer to something less than a year and a day and (the government claims) said as much. Gov't Ltr. at 1-2. But the government has no idea what the Court would have done, because the record is silent on this point. To the contrary, the fact that the Court remarked that "the guidelines range [wa]s simply too high" *id.* at 2 (citing Feb. 28, 2022 Hr'g Tr. 42:19-20), proves that the erroneously-high Guidelines range was the starting point for the Court's analysis. Put differently, it matters not only that the range was "too high," but also by how much. What is clear under Second Circuit law, such as in *Bennett* and *Wright*, is that courts recognize the substantial harm and prejudice to a defendant (and to the appearance of justice overall) where they are sentenced based on an incorrect Guidelines range, which may have anchored the sentencing court's thinking, *even where the sentence is below the range*.

The cases relied on by the government did not leave this question to mere guesswork. Compare *United States v. Habbas*, 527 F.3d 266 (2d Cir. 2008), cited by the government. *See* Gov't Ltr. at 203. The defendant in *Habbas* was not prejudiced by counsel's failure to obtain a lower range "because the district court made it clear [at the time of sentencing] that this dispute about the Sentencing Guidelines was 'academic.'" *Habbas*, 527 F.3d at 273-74. The sentencing court, in other words, was presented squarely with the question of what it would have done under a different Guidelines calculation and determined, at the time of original sentencing, that the

sentence would have been the same regardless. No one, including the Second Circuit, had to guess what the result would have been under a different Guidelines range. *See id.* ("It made no difference whether counsel objected to the four-level adjustment."). Here, in contrast, the Court had no occasion to consider what it would have done had Mr. Archer's Guidelines range been different, because the error went unnoticed. But there is every reason to believe that the Court would have at least considered a lower sentence. The Court's primary rationale for sentencing Mr. Archer to the time that it did, as opposed to something lower, was the seriousness of the crime and the need to promote respect for the law, *i.e.*, general deterrence. *See* Feb. 28, 2022 Hr'g Tr. 39:12-16. Both of these sentencing factors are reflected in the Guidelines range, so where the Guidelines range was erroneously high, the interests of just are best served by allowing the Court to consider the appropriate sentence in light of the correct range.

\*   \*   \*

It remains hard to understand why the government is fighting so hard to avoid a simple resentencing, when the original sentence was so obviously—and admittedly—infected by error. The government has (or at least ought to have) no interest in Mr. Archer serving a day longer in prison than appropriate, and its argument that the Court's sentence would have been the same either way is pure speculation. Mr. Archer, on the other hand, has a strong interest in being sentencing by reference to the correct Guidelines range, if there is a possibility that it will result in a shorter sentence. And the public at large, and our justice system, have a very strong incentive to ensure that criminal defendants are sentenced appropriately and that the appearances of justice are served as well.

As explained in our earlier letter, Mr. Archer respectfully requests that the Court grant Mr. Archer habeas relief, vacate his sentence, and proceed to immediate resentencing after giving the parties an opportunity to submit supplemental sentencing memoranda that would permit the Court to take into account Mr. Archer's changed circumstances since the original February 28, 2022 sentencing. Should the Court have any remaining questions concerning the merit of Mr. Archer's resentencing request, we respectfully request the opportunity to provide full briefing and evidentiary submissions.

Thank you for your consideration.

Respectfully,

*/s/ Matthew L. Schwartz*
Matthew L. Schwartz